**KINDT et al. v. PARMENTER et al.**

No. 9232—Opinion Filed Sept. 20, 1921.

(Syllabus.)

1. **Wills—Probate—Appeal to District Court —Jury Trial—Effect of Verdict.**

On appeal to the district court from a judgment of the county court admitting a will to probate, the former court may, in its discretion, make an order for a trial by jury of any or all the material questions of fact arising upon the issues between the parties. But in such case the verdict of the jury will be merely advisory to the court, and he may adopt or reject their conclusions, as he sees fit; for the whole matter must eventually be left to him to determine.

**2. Appeal and Error—Review of Equity Case—Findings—Conclusiveness.**

The findings of fact of the trial court in a suit in equity will not be set aside on appeal unless it appears that they are clearly against the weight of the evidence.

**3. Wills—Undue Influence—Relation of Attorney.**

The mere fact that a trusted attorney of a testator who bequeathed his property to a church of which both attorney and testator were devout members, drew the will and was named therein as executor, does not constitute the attorney a beneficiary under the will nor raise a presumption of undue influence.

**4. Same.**

The rule under which undue influence is inferred from a confidential relation between the testator and the person charged with procuring the will, has no application where such person took nothing under the will.

**5. Same—"Undue Influence."**

Undue influence, such as will invalidate a will, must be something which destroys the free agency of the testator at the time when the instrument is made, and which, in effect, substitutes the will of another for that of the testator. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life, or that he was surrounded by them and in confidential relations with them at the time of its execution. Mere general influence, not brought to bear on the testamentary act, is not undue influence, but, in order to constitute undue influence, it must be used directly to procure the will, and must amount to coercion destroying the free agency of the testator. Mere suspicion that undue influence was brought to bear is not sufficient to justify the setting aside of the will.

**6. Same—Proof—Circumstantial Evidence.**

While undue influence in the making of a will may be shown by circumstantial evidence, such evidence must amount to proof, and is insufficient when circumstances are not proven which are inconsistent with the claim that the will was the spontaneous act of the testator.

**7. Same—Appeal and Error—Harmless Error.**

Finding no evidence whatever tending to show undue influence, it is sufficient to say of the remaining errors complained of that we have carefully examined the entire record and find them to be either without merit or that they are harmless under section 6005, Rev. Laws 1910, which provides: "No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

**8. Costs—Discretion of Court in Equity Case.**

Under the governing statute which is declaratory of the general rule applicable to suits in equity, the trial court had the right in the exercise of a sound discretion to tax the costs against the successful party.

**9. Same.**

The trial court did not abuse its discretion in taxing the costs against the estate.

Error from District Court, Comanche County; Cham Jones, Judge.

In the matter of probate of last will and testament of Abraham Kindt, deceased; B. M. Parmenter and others, executors. Upon appeal by Josiah Kindt and another to district court from action of county court admitting will to probate, such action was affirmed, and they bring error. Affirmed.

Johnson & Stevens and W. C. Henderson, for plaintiffs in error.

Chas. Mitschrich, for defendants in error.

KANE, J. This is an appeal from the action of the district court of Comanche county in affirming the action of the county court in admitting to probate the last will and testament of Abraham Kindt, deceased. By the terms of his will Mr. Kindt, the testator, bequeathed all his property, real and personal, to the First Church of Christ Scientist of Lawton, of which he was a member. The will further directed that the real estate bequeathed be converted into cash when market conditions assure a fair price, and that the proceeds be used to purchase a site for a church costing not to exceed $2,000, and for the erection thereon of a Christian Science church for the use of the congregation of which he was a member. This will was executed on the 30th day of September, 1912, more than three years prior to the death of the testator, while he was in good physical health and sound and disposing mind. It was drawn by B. M. Parmenter, who had been acting as attorney for the deceased for six or seven years prior to his death. The will named B. M. Parmenter, W. E. Hudson, and Chas. E. Myers, who were also Christian Scientists, as executors. The deceased was an unmarried man and left no immediate family; his sole surviving kindred being two brothers, one 80 years old and the other 78 years old, the deceased being 69 years old at the time of

his death. In due time the will was presented for probate to the county court of Comanche county, and one of the brothers of the deceased, Josiah Kindt, filed a contest on two grounds, to wit: (1) That the deceased did not have testamentary capacity at the time of the execution of the will; (2) that he was unduly influenced in the execution thereof by B. M. Parmenter, W. E. Hudson, Chas. M. Myers; and other influential Christian Scientists in Lawton, Oklahoma.

This contest was decided adversely to the contestants, and after the will had been admitted to probate by the county court, Josiah Kindt, the contestant, and Henry Kindt, the elder brother, who up to that time had not been a party to the contest proceeding, both gave notice of appeal to the district court. Upon the cause coming on for trial de novo, the district court submitted two questions of fact to the jury for determination, which questions, together with the answers of the jury thereto, were as follows:

"(1) Question: At the time the said Abraham F. Kindt executed the will in controversy, was he acting in the execution of said will under undue influence? Answer: Yes. (2) Question: At the time the said Abraham F. Kindt executed said will, did the said Abraham F. Kindt have testamentary capacity? Answer: Yes."

Upon motion of the proponents of the will the trial court set aside the findings of fact of the jury on the first question submitted and found as a fact that the said testator, Abraham F. Kindt, was at the time of the execution of said will free from undue influence. Thereupon judgment was entered sustaining the will, to reverse which this proceeding in error was commenced.

As counsel seem to accept as final the findings of the jury and the action of both trial courts on the first ground of contest, viz., that the deceased did have testamentary capacity at the time of the execution of the will, but one question remains for our consideration, and that is whether the finding of fact of the trial court that the said testator, Abraham F. Kindt, was at the time of the execution of said will free from undue influence, was sufficiently supported by the evidence. It is well settled in this jurisdiction that on appeal to the district court from a judgment of the county court admitting a will to probate the former court may, in its discretion, make an order for a trial by jury of any or all the material questions of fact arising upon the issues between the parties. But in such case the verdict of the jury will be merely advisory to the court, and he may adopt or reject their conclusions, as he sees fit; for the whole matter must eventually be left to him to determine.

Parker v. Hamilton, 49 Okla. 693, 154 Pac. 65.

It is equally well established that the findings of fact of the trial court in a suit of equity will not be set aside on appeal, unless it appears that they are clearly against the weight of the evidence.

Counsel for plaintiffs in error concede the applicability of these rules to the case at bar, but say that under the rules laid down by this court in Gidney v. Chapple, 26 Okla. 737, 110 Pac. 1100, the findings of the trial court on the question of undue influence are contrary to the clear weight of the evidence and should be set aside—

"(1) Because Mr. Parmenter stood in the relation of attorney and almost that of spiritual adviser, fiduciary relations of the highest trust, and he is the executor and the Scientist Church the sole beneficiary, and under such circumstances the law indulges the presumption that undue influence was used in the procurement, and the burden is upon the proponents to show to the contrary."

"(2) Because the will is unnatural, in that it disinherits all blood relatives, leaving the entire estate to strangers; and

"(3) Because the universal maxim of the law treats one who writes himself the heir as lending suspicion to the writing."

We are unable to perceive very much, if any, analogy between Gidney v. Chapple, supra, and the case at bar. Gidney v. Chapple was commenced by Chapple for the purpose of setting aside an instrument purporting to convey whatever interest he claimed in his deceased mother's estate to Gidney, who was her attorney and the beneficiary of her will, which it was alleged was obtained by fraud, the fraud consisting in Gidney concealing certain facts from Chapple which he was bound to disclose before dealing with him in reference to his interest in his mother's estate. It seems that Mrs. Rawlings, the mother of Chapple, had made a will, drawn by Gidney, in which she practically disinherited her son and made Gidney her beneficiary. Gidney, for the purpose of avoiding a contest by Chapple, purchased the interest of the latter in the estate of his mother for a nominal sum. In this transaction Gidney conveyed certain information to Chapple calculated to influence his conduct therein, but concealed from him the true condition of the estate. The will and the circumstances under which it was made were shown in evidence in support of the allegation that the execution of the will and obtaining the conveyance in question were part and parcel of a scheme to defraud Chapple out of his interest in his mother's estate. The Supreme

Court, affirming the judgment of the trial court, held that, although a party may keep absolute silence and violate no rule of law or equity, yet, if he volunteers to speak and convey information which may influence the conduct of the other party, he is bound to discover the whole truth. A partial statement then becomes a fraudulent concealment, and even amounts to a false and fraudulent misrepresentation.

It is true that the court in the body of the opinion discussed the rule applicable to proving wills where a confidential relation between the testator and legatee was shown to exist, and announced the rule that whenever it appears that a will was executed through the intervention of one occupying such favored relation to his especial advantage, the presumption of undue influence arises and the suspicion must be put to rest by evidence adduced to sustain the validity of the will by showing it to be a free and voluntary act of the testator. From a careful examination of the record, we are convinced that the case at bar is not governed by this rule. As we view the record in the case at bar, there was no serious conflict in the evidence on any material point. It discloses substantially the following state of facts: The testator at the time the will was made was a man of more than ordinary intelligence and in the full enjoyment of good mental and physical health. By intelligent and frugal management of his business affairs he had accumulated considerable property and money, of the value of about $20,000. He was a devoted member of the Christian Science church, and frequently told his friends and neighbors, both before and after the execution of his will, that he was going to leave his property to the church, his reason for doing so being that he felt grateful to the church for its help and he desired to give his property to the church, where it would do the most good for humanity.

The testimony of Mr. Walthal, which was typical of many other disinterested witnesses on this point, was as follows:

"Yes, sir; I have heard him express himself a number of times that inasmuch as he felt so grateful for what Christian Science had done for him he expressed himself as anxious of having his property go where it would do the most good to the greatest number of people."

Another witness, Mr. Boggs, testified as follows:

"Mr. Kindt talked to me about his own help in Christian Science; he seemed very grateful for it. He told me he had already willed his property to the church in case of his death. His reason for doing so, he said, was, he felt grateful for his help in Science, and he desired to give it to the church, where it would do the most good for humanity."

Mr. Parmenter, who had been Mr. Kindt's attorney for some seven or eight years prior to the execution of the will, was also a prominent member of the Christian Science Church. There was evidence to the effect that Mr. Kindt imposed the utmost confidence in Mr. Parmenter, many times expressing admiration for him both as a lawyer and a fellow churchman. Outside of this there was no testimony whatever tending to show undue influence on the part of Mr. Parmenter.

The testimony of Mr. Parmenter, which was undisputed, shows what occurred at the execution of the will, as follows:

"Q. Who gave you the instructions with reference to what was to go in the will? A. Abraham F. Kindt. Q. Did anyone else, to your knowledge, give any instructions with reference to it? A. No, sir. Q. Was there anything put in the will except as Mr. Kindt instructed you? A. No, sir."

Cross-examination by Mr. Stevens:

"Q. How long was the will being prepared? Over what period of days did it extend between the time its preparation began and the time it closed? A. My recollection is he came in and told me what he wanted and I took a slip of paper from my desk and noted it, and then told him to come back after a while and I would have it drawn off; I then dictated it to my stenographer, and he came back after a little and it was signed up."

Recurring again to the ground for reversal hereinbefore set out, it is fairly obvious from the foregoing brief resume of the evidence that the rule referred to in the Gidney Case is not applicable to the case at bar for several reasons. Although it was shown that Parmenter was a trusted attorney and legal advisor of Mr. Kindt and a prominent member of his church, he was not a beneficiary in the will, and this, coupled with the fact that he was named as executor, was not sufficient to raise a presumption of undue influence, Livingston's Appeal, 63 Conn. 68; In re Kilborn's Estate (Cal.) 120 Pac. 762. The same authorities support the proposition that the rule under which undue influence is inferred from a confidential relation between the testator and the person charged with procuring the will, has no application where such person took nothing under the will. The situation disclosed by the testimony was not new or novel or in any way extraordinary or unnatural. Kindt was a devoted member of his church and very grateful to it for the

benefits he had received from its ministrations. He was a bachelor with no direct descendants depending upon him for support and maintenance and no near kinsman except his two brothers, older than himself, one of whom has since died and both of whom were in fair circumstances financially. His conduct in willing his property to his church in these circumstances, where, as he says, he thought it would do the most good for humanity, seems to us to be entirely sane, normal, natural, and commendable. And the same may be said of his relations with his lawyer, Mr. Parmenter. It is not remarkable for attorney and client to be members of the same church, nor that this dual relation begets trust and confidence between the parties. On the contrary, it is quite usual and common. Mr. Parmenter had been Mr. Kindt's lawyer for seven or eight years before the preparation of his will, and it would have been strange indeed if he had employed another lawyer for the purpose of preparing his last will and testament. Aside from the existence of the relations just stated, there is not a scintilla of evidence in the record tending to show that Mr. Parmenter exercised any undue influence over Mr. Kindt in the matter of the preparation of his will. Indeed, the direct evidence is all to the contrary. As related by Mr. Parmenter in his testimony hereinbefore set out in full, the transaction was one of the most ordinary and simple that could possibly occur between attorney and client. There can be no pretense that there was any direct evidence of any undue influence exercised by Mr. Parmenter or any other person over the testator at the very time of the execution of the will or prior or subsequent to that event which could affect his testamentary act. Moreover, as the will was executed two or three years prior to the testator's death, he had ample opportunity for reflection and to change his will if he so desired. To all appearances, and as far as the circumstances and proof show, he was acting with perfect freedom and following his own wishes.

While counsel for the respective parties have cited a great many authorities, there is no great difference between them on any fundamental question of law. In these circumstances, and in view of the fact that we find the precise question involved fully and satisfactorily considered and discussed by this court in several cases, we do not deem it necessary to review at length the authorities cited from other jurisdictions.

In Cook v. Cook et al., 71 Oklahoma, 175 Pac. 507, the testator was the mother of the beneficiary in the will. The will was contested by the wife and child of the testator upon the ground:

"That at the time of making said will the said William Nye Cook was under undue influence, the same being exercised by Mary Cook, his mother, who is the chief beneficiary under the said will, and also other members of his family who were present during his last illness."

Upon the trial the confidential relation between the testator and beneficiaries was shown, but aside from this there was no evidence of undue influence, all of the direct testimony being to the contrary. The trial court found there was sufficient evidence to establish undue influence, and held in favor of the contestants. In reversing this ruling this court says:

"We are wholly unable to find from this evidence any justification whatever for refusing the will probate. Undue influence, such as will invalidate a will, must be something which destroys the free agency of the testator at the time when the instrument is made, and which, in effect, substitutes the will of another for that of the testator. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life, or that he was surrounded by them and in confidential relations with them at the time of its execution. Mere general influence, not brought to bear on the testamentary act, is not undue influence; but, in order to constitute undue influence, it must be used directly to procure the will, and must amount to coercion destroying the free agency of the testator. Mere suspicion that undue influence was brought to bear is not sufficient to justify the setting aside of the will. Estate of Keegan, 139 Cal. 123, 72 Pac. 828; McCullock v. Campbell, 49 Ark. 367, 5 S. W. 590; Westcott v. Sheppard, 51 N. J. Eq. 315, 25 Atl. 254, 30 Atl. 428.

"It is true from the nature of the subject that proof of undue influence is necessarily largely or wholly circumstantial, and the contestant is not confined to the facts which he may be able to adduce, but is entitled to all the natural inferences which may be derived from established facts. But the will of a person found to be possessed of sound mind and memory ought not to be set aside on evidence tending to show only a possibility of undue influence. The express intentions of the testator should not be thwarted without clear reason therefor. The right to make a will includes the right to make it according to the testator's own desires, subject only to the statutory restrictions. Unequal or unnatural provisions in themselves raise no presumption of undue influence. They may be considered with other evidence in determining the question, is this the testator's will? but they do not shift the burden of proof, and, in the absence of proof that undue influence has been exercised, they have no weight. If the will is expressive of the

testator's wishes, lawfully made, the opinions of other persons, however they may condemn its motive or disapprove its scheme, cannot, in any way, rightfully control his power to do with his own as he pleases, without impairing one of the incidents which give to every man's property its value. In our judgment there was absolutely no evidence adduced at the trial tending to show that, whatever influence Mary Cook or the members of her family may have had over the testator, it was ever exercised for the purpose of procuring a will of such a kind as to be beneficial to her and to the prejudice and disappointment of others."

Gleason et al. v. Jones, 79 Okla. 191, 192 Pac. 203, is another case in point, although the undue influence alleged arose out of an entirely different confidential relation. The testator at the time the will was executed was engaged in conducting a bawdy house, and she bequeathed her property to two inmates of the place who were present when the will was drafted. The trial court found that, while there was no direct evidence that the will was made at the suggestion of either of the beneficiaries, the mere fact of the existence of the relation and the presence of the beneficiaries was sufficient evidence to establish undue influence. This court, after citing the Cook Case, supra, with approval, reversed the judgment of the trial court, holding that:

"A devise to one associated with testatrix in an immoral environment and the presence of the devisee in the room where testatrix was instructing her lawyer as to the disposition she wished to make of her property, the lawyer being at the time engaged in drafting the will, would not, because of the immorality of the association or the presence of the devisee, standing alone, give rise to an inference of undue influence exerted by the devisee over the testatrix."

While there are other assignments of error argued by counsel for plaintiffs in error, such as error of the court in admitting incompetent, irrelevant, and immaterial testimony; error in setting aside the verdict of the jury finding that at the time the said Abraham F. Kindt executed the will in controversy he was acting under undue influence; error in certain findings that were made by the trial court, etc.—we do not deem it necessary to notice them in detail.

It is sufficient to say of the errors of this class complained of that we have examined the record carefully, and find them to be either without merit, or that they are harmless under section 6005, Rev. Laws 1910, which provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

While it is true that the trial court allowed both parties the greatest latitude in the matter of the introduction of evidence, and also made elaborate findings of fact and conclusions of law, some of which may have been unnecessary, the controversy centered around the narrow, pivotal ground of contest relied upon by the plaintiffs in error, to wit: That the testator was unduly influenced in the execution of his will by B. M. Parmenter, W. E. Hudson, and Chas. E. Myers, and other influential Christian Scientists in Lawton, Oklahoma.

As we find no evidence whatever in the record tending to support this allegation, the trial court was clearly right in setting aside the finding of the jury thereon and affirming the judgment of the county court admitting the will to probate.

It is contended by counsel for defendants in error in their cross-petition in error that the trial court erred in taxing the costs against the estate of Abraham F. Kindt, deceased. It appears that when the judgment in favor of the proponents of the will was first rendered the trial court taxed the costs against the contestants, but later, upon overruling the motion for a new trial, the former judgment was modified by taxing the costs against the estate. Counsel for defendants in error admit that under the governing statute, which is declaratory of the general rule applicable to suits in equity, the trial court had the right, in the exercise of a sound discretion, to tax the costs against the successful party.

In the original opinion handed down, while we affirmed the judgment of the trial court upon the merits, we reversed the part thereof taxing the costs against the estate upon the ground that no sufficient reason for such action was made apparent to this court. Upon further careful examination of the record, upon petition for rehearing, we are convinced that the trial court did not abuse its discretion in taxing the costs against the estate.

For the reasons stated, the judgment of the court below is affirmed in toto and the case remanded with directions to enter judgment accordingly.

HARRISON, C.J., PITCHFORD, V. C. J., and MILLER, ELTING, KENNAMER, and NICHOLSON, JJ., concur; McNEILL, J., dissents; JOHNSON, J., disqualified, not sitting.

---

McNEILL, J. (dissenting). I am unable to agree with the majority opinion, and believe the trial court tried the case upon the wrong theory, and erred in applying what he thought was the law to the facts.

The decedent, Abraham Kindt, disinherited all his relatives and bequeathed all of his property, amounting to about $20,000, to the First Church of Christ, Scientist, Lawton. This was not all property accumulated by him, and in my judgment it is material to investigate how the property was acquired and the relation existing between this man and his brothers.

In his early manhood he settled in Republic county, Kan., near two brothers and a sister, Crissie Kindt. An older brother and Josiah Kindt, one of the contestants herein, had located the sister upon 80 acres of land, which she homesteaded. The contestant aided her and assisted her in obtaining her patent to the land. During the years 1903 and 1904, all of the Kindts disposed of their property in Kansas and came to Oklahoma. Three of them located at Lawton, and one at Perry, Oklahoma. Crissie Kindt, the sister, and the deceased, both being unmarried, lived together for many years. Both were strong in the faith of Christian Science. Crissie Kindt died in 1911 and her property was commingled with Abraham Kindt's and appears as his property in this controversy. Several years prior to her death, she fractured one of her limbs. The brother, Josiah Kindt, wanted to call a physician to reset the broken limb, but the sister and the deceased would not consent to have a physician either reset said limb or treat the same, but relied upon their faith in Christian Science. The sister remained an invalid during the remaining days of her life and was unable to walk, except around the house by the use of a chair, nor was she able to use the limb after the same was fractured.

On September 30, 1912, the will in controversy was executed. There are certain facts surrounding the execution of the will and the organization of the church that occurred at about the same time, which, in my mind, are material in the consideration of this case. The will was drawn by B. M. Parmenter, an attorney of Lawton, and witnessed by John Lenertz and Belle E. McKaughan, who were at that time stenographers in the office of B. M. Parmenter, and by Hattie Eckles, a young lady at the time working across the hall from the office of Mr. Parmenter. The evidence of all the witnesses to the will disclosed that the will was never read to Mr. Kindt. Two of the witnesses testified they were simply asked to witness the will and signed their names to the same. The other one testified that Mr. Kindt acknowldged or stated the same was his will. The two witnesses who were Parmenter's stenographers testified that, about the time of the execution of said will, Mr. Kindt had been visiting the office for several weeks at frequent intervals, and interviewed Mr. Parmenter. The record also disclosed that, seven days prior to the execution of the will, which would be during the time Mr. Kindt was visiting the office, and immediately prior to the execution of the will, Mr. Parmenter drew the articles of incorporation of the Christian Science Church of Lawton. The articles bear date of September 23, 1912. September 24, 1912, the articles were filed with the register of deeds at Lawton. On the 2nd day of October, 1912, the articles were filed in the Secretary of State's office at Oklahoma City. The incorporators of the church were B. M. Parmenter, Mrs. Emma Parmenter, Mrs. Eva B. Parmenter, Chas. Mitschrich, C. W. Myers, and Mrs. Gertrude Goode. The record discloses that Mr. Parmenter was the party who had forwarded the articles of incorporation of the church to the Secretary of State for filing. The Christian Science Church had been in existence at Lawton prior to said time, but had never been incorporated. B. M. Parmenter and Mrs. Eva Parmenter were leaders in the church and one of the Parmenters was a practitioner. What relation Mrs. Emma Parmenter sustained to the other Parmenters does not appear. At the time of the execution of the will Mr. Parmenter had been an attorney for Mr. Kindt for many years.

The will was presented for probate, and the relatives of Mr. Kindt filed a contest. The county judge admitted the will to probate, and from said order admitting said will to probate, the contestants appealed to the district court. The contest in the district court was tried before a jury, and the court instructed the jury and submitted two questions, to wit: First. "At the time said Abraham F. Kindt executed the will in controversy, was he acting in the execution of said will under undue influence?" Nine of the jurymen answered this question in the affirmative. The second question: "At the time said Abraham F. Kindt executed said will, did the said Abraham F. Kindt have

testamentary capacity?" This was answered in the affirmative. Upon the motion to set aside the finding of the jury, the trial court set aside the first finding of the jury, and made a general finding upon the question to the effect that there was no undue influence proven, and admitted said will to probate. From the judgment of the court, the contestants have again appealed.

For reversal, the contestants assign numerous assignments of error. These assignments may be classified as follows:

First: That the court permitted the proponents of the will to defend the case upon the theory that the truth or untruthfulness of the teachings of Christian Science was an issue in the case and permitted a great number of witnesses to testify concerning the power of practitioners of Christian Science to heal the afflicted, and what cures Christian Science had really accomplished.

Second: The contestants contend that under the facts in this case, as produced by the evidence of contestants showing the relation existing between the deceased and B. M. Parmenter, the same was sufficient to raise a presumption of undue influence, and the burden was upon the proponents to show the contrary.

In considering the first assignment, the contestants of the will introduced evidence to prove or tend to prove that the deceased entertained such an extraordinary belief in Christian Science that he followed blindly and implicitly such belief to such an extent that he became a monomaniac upon that subject. They also introduced expert and nonexpert witnesses as to the mental capacity of deceased to consider transactions where the Christian Science Church was concerned. Witnesses also related the peculiar ideas and opinions advanced by the deceased in regard to Christian Science, and testified that the beliefs entertained by the deceased were different from the beliefs entertained by the average follower of the Christian Science Church, and were not in accord with the teachings of Christian Science. The proponents of the will, to overcome the force of this evidence, over the objection of the contestants, introduced evidence to uphold the soundness of the Christian Science religion, and its power to heal the afflicted, and the many cures it has accomplished, and produced witnesses who had received Christian Science treatments and testified to the results obtained by them.

The proponents of the will made this the principal issue in the case, contending the same was material. The court permitted a great amount of this kind and class of evidence to be introduced; and more than one-half of the evidence is of this kind and character. The court permitted the case to be tried upon these issues and upon this theory. In this, I think, the court committed error. The soundness or unsoundness of the teachings of the Christian Science religion, or the truth or untruthfulness of its followers' belief, or their power to heal the afflicted, has no place in the trial of this lawsuit.

It was the contention of the contestants that the decedent was a monomaniac in his religious belief to such an extent that he was incapable of reasoning where the subject of Christian Science was concerned, and that the will was a product of his peculiar religious belief. This was the issue in the case, and the contestants produced evidence tending to support this theory. That this is a proper issue in a case of this kind, is supported by the following authorities:

The Supreme Court of Washington, in the case of Ingersoll v. Gourley, 139 Pac. 207, stated as follows:

"Courts recognize the fact that a man may through manifestations of religious belief evidence mental disorder, and, while testamentary capacity is not to be measured by religious belief or opinions, yet, if the will in question would not have been made if the testator had not entertained some peculiar religious belief, his testamentary capacity may well be doubted."

The court, on page 209, used the following language:

"The law takes no account of a man's religion. It cannot say that, because one man believes in the generally accepted dogmas he is sane, and another is insane because he rejects them and announces some new doctrine that may shock the sensibilities or disturb the religious fervor of some devout believer in the so-called orthodox faith. But, while this is true, the courts have recognized the fact that a man may through manifestations of religious belief evidence mental disorder; and while testamentary capacity is not to be measured by religious belief or opinions, yet if these opinions are of a nature which produces a will which is wholly the result of them, in other words, if the will in question would not have been made if the testator had not entertained some peculiar religious belief, his testamentary capacity may well be doubted. Underhill on Wills, p. 130."

See Alexander's Commentary on Wills, p. 469. The same principle is announced in the case of Orchardson v. Cofield (Ill.) 49 N. E. 197, and in American Bible Society v. Price (Ill.) 5 N. E. 126.

The question, then, for determination by the court is:

"Whether the peculiar belief entertained by the deceased was that of a rational or irrational person from the standpoint of a believer of Christian Science."

It was no defense and entirely improper for the proponents to meet this question by introducing evidence regarding the truth or untruthfulness of the Christian Science religion, nor was the question of the power to heal the afflicted an issue or a defense, nor was it proper to introduce evidence to disclose what cures had been accomplished by the practitioners of Christian Science. The correctness of this position is discussed in the case of O'Dell et al., Exec's of John F. Goff, v. Leslie Goff (Mich.) 112 N. W. 736, 10 L. R. A. (N. S.) 989. The syllabus of the opinion, as condensed in 10 L. R. A. (N. S.), reads in part as follows:

"2. A belief in spiritualism affords no evidence of insanity.

"3. A will executed by one under such an extraordinary belief in spiritualism that he follows blindly and implicitly supposed directions of spirits in constructing the will is not admissible to probate.

"4. Upon the question of the testamentary capacity of a believer in spiritualism, evidence of the truth or untruth of such faith is inadmissible.

"5. Witnesses in a will contest cannot testify that testator was a monomaniac merely because believing in spiritualism.

"6. In a will contest based on testator's belief in spiritualism, evidence is admissible as to whether or not certain beliefs would be irrational from the standpoint of a spiritualist."

In cases where the testamentary capacity of a testator is an issue, when it is contended the deceased was a monomaniac concerning his religious belief, the following questions are made an issue, according to the cases cited above:

First: A person's religious faith in whatever church or denomination he may choose affords no evidence of insanity.

Second: The law grants, to every person the right to accept his religious faith on evidence that is satisfactory to his mind, and the court will never inquire whether that faith is sound or unsound or the principle advanced by his church true or untrue.

Third: In a contest over a will, where the testamentary capacity of a testator is an issue, and where it is contended that the will was executed by a person who had become a monomaniac concerning a certain religious faith, and that he thought continuously and persistently upon the subject to such an extent that he was incapable of reasoning where this subject was concerned, then his testamentary capacity may be doubted.

Fourth: In such a contest, it is not a question of whether the doctrines advocated by the church are sound or unsound, but it becomes a question of whether the particular religious belief entertained by the testator was that of a rational or irrational person from the standpoint of the followers of that particular church or denomination to which he belonged.

If the rule announced above is the correct rule, the trial court tried the case upon the wrong theory, and permitted the proponents of the will to defend the case upon the wrong theory. The question of the truth or untruthfulness of the teachings of Christian Science was not an issue, nor was the question of the power of Christian Science to heal the afflicted an issue in the case. It is apparent from the record that the case was presented and decided by the court upon these issues, and in this the court committed error.

The next question argued in the brief is: Under the facts in the case, the relation of attorney and client existing between Mr. Parmenter and the deceased, their spiritual relations concerning matters of the church, the interest of Mr. Parmenter in the church, the fact that the church was the sole beneficiary under the will, and Mr. Parmenter being one of the executors of the will—is this sufficient in law to indulge the presumption that undue influence was used in the procurement of the will and cast the burden upon the proponents of the will to show the contrary?

The contestants of the will contend that by reason of the fact that the evidence disclosed that B. M. Parmenter was one of the leaders in the church, and had been attorney for the deceased for many years prior to the time of the execution of the will; that he prepared the will; that he was one of the incorporators of the church—the church being incorporated about the same time the will was executed—and the church was the sole beneficiary under the will, and he was made one of the executors of the will; that another Parmenter was a Science practitioner, and had treated the deceased and his sister—that by reason of all of said facts B. M. Parmenter was interested therein, being both a legal and spiritual advisor of the deceased, and interested in the will, and the burden was upon the proponents of the will to prove that no undue influence was used in the writing of the will.

It is urged on behalf of the proponents of the will that Mr. Parmenter, although an

executor of the will, was not a beneficiary under the will to such an extent that the burden of proof would shift to the proponents of the will. This identical question has never been before this court in a case of this kind and character. This court has passed on a case where the relation of attorney and client was involved, and where the relation of guardian and ward existed, where a will and deed were in question. In the case of Welch v. Barnett, 34 Okla. 166, 125 Pac. 472, Commissioner Ames quoted from the case of Lyon v. Campbell, 88 Ala. 462, 7 South. 220, as follows:

"While the mere fact that a will is written by a party who takes a benefit under it does not invalidate it, if the benefit is large, and especially if the beneficiary is a stranger to the testator's blood, the instrument will be scrutinized with suspicion, and clear proof that the testator knew its contents will be required to admit it to probate. Proof of testamentary capacity and of formal execution are insufficient."

In the case of Gidney v. Chapple, 26 Okla. 737, 110 Pac. 1099, Justice Kane stated as follows:

"Because Gidney stood in the relation of attorney to Mr. Rawlings at the time of the execution of the will, a fiduciary relation of the highest trust, and is the principal beneficiary in the will, the law indulges the presumption that undue influence was used in its procurement and the burden is upon him to show the contrary."

The evidence further disclosed that Mr. Parmenter had been a leader in the church; that he was with the deceased at the time of the death of the sister; that Mrs. Eva Parmenter gave deceased absent treatment during his last illness. A brother of deceased also testified that the deceased looked to Mr. Parmenter as one of his spiritual advisers. The question is whether, under these facts, the burden was cast upon the proponent of the will to prove no undue influence was used in the procurement of the will. In the case of In re Welsh, in vol. 1, Redfield (N. Y.) 238, the court stated as follows:

"The relation of spiritual adviser, where the person holding it procures a will to be drawn and superintends its execution, by which a church in which he is interested is benefited, raises enough of a presumption of undue influence to require proof of spontaneity or volition to repel it."

The New York court again in the case of Marx v. McGlynn, 4 Redfield, 455, in a case where a woman had willed her property to Mr. Bradley, who was leader of the same church, but who was not present and did not aid or assist in the drawing of the will, said:

"Held, that the relations of Mr. Bradley to decedent, as her spiritual advisor, were of such an intimate character, that, had he been present at the dictation or execution of the will, or had he procured it to be made, the presumption of undue influence would arise, as he was not presumably entitled to decedent's bounty."

I think the rule announced by the New York court is applicable to the facts in the case at bar, as the evidence disclosed that, as between Mr. Parmenter and the deceased, the relation of attorney and client existed, and had for years, and that the deceased recognized Mr. Parmenter superior in a spiritual relation. Mr. Parmenter drew the will practically at the same time he drew the articles of incorporation of the church and incorporated the church. Three of the six incorporators of the church were Parmenters. All of the deceased's property was bequeathed to the church. I think the facts bring the case squarely within the rule that the relation between the parties was such that the presumption of undue influence would arise, and the burden would shift to the proponents of the will to overcome that presumption.

The Supreme Court of Iowa in the very recent case of Dolan v. Henry, 177 N. W. 712, announced the following rule:

"Unfair disposition of property is a circumstance to be considered in determining whether the testator was of sound mind."

If the unfair disposition of a man's property is a circumstance to be considered in determining his soundness of mind, why is it not a circumstance to consider where he has disinherited all of his relatives and bequeathed his property to a church as in the instant case, in determining whether undue influence was used, especially where the incorporators of the church have drawn the will? Do not these facts cast the burden upon them to prove by a preponderance of the evidence that undue influence was not used? It must be remembered that the brothers who were disinherited were the brothers who located the sister upon the homestead in Kansas and aided and assisted her in acquiring her property at a time when the deceased in this case was not present, and he now has bequeathed that property away from them and to a church of which they are not members.

This court in cases involving the contest of a will has always held that if the finding of the trial court is not clearly against the weight of the evidence, the judgment of the court will be affirmed on appeal. This case, however, presents a peculiar condition. The

case was tried to a jury, and the instructions disclose that the court instructed the jury—which I think proper—that the facts in the case were sufficient to raise the presumption that undue influence had been used in procuring said will, and that the burden of proof was upon the proponents of the will to overcome such presumption; and after being properly instructed upon this question, the jury returned a verdict in favor of the contestants. Or, in other words, the proponents of the will did not overcome this presumption by competent evidence.

While the verdict of the jury was not binding upon the trial court, and the court was at liberty to disregard the same, and to make findings of fact contrary to those made by the jury, yet both sides briefed the case on the theory and on oral argument contended that the court in making his findings held the facts in the case were not sufficient to indulge the presumption of undue influence and cast the burden of proof upon the proponents; but, under the facts in the case, the court held it was necessary for the contestants to prove undue influence by a preponderance of the evidence. The contestants contend this was error, and the proponents contend the court did not commit error in so holding. In this we think the court committed error. We have the finding of the jury, based upon proper instructions, and the contrary finding of the court, based upon an erroneous interpretation of the law, which leaves the case, in my judgment, without any finding of the trial court whatever. In addition, the court tried the case upon the wrong theory over the objections of the contestants.

Under those conditions, I think the ends of justice require that the case be reversed and remanded and the same be tried upon the proper theory.