202 Okla. 351 (1950)
213 P.2d 865
In re HEITHOLT'S ESTATE.
STATE
v.
DUERKSEN et al.
No. 32291.
Supreme Court of Oklahoma.
January 17, 1950.
*352 Mac Q. Williamson, Atty. Gen., and Harry O. Glasser, Special Counsel, of Enid, for plaintiff in error State of Oklahoma.
Henry S. Johnston, of Perry, for George G. Mangold.
Wilson & Wilson, of Enid, for defendant in error Herman Adolph Duerksen, Executor.
Earl Coldiron, of Enid, and E. Blumhagen, of Watonga, for defendant in error Northern Oklahoma Co-operative Hospital Association.
J. Dawson Houk, of Fairview, for defendants in error Farmers Union Co-operative Hospital Association of Enid, and Heitholt Memorial Hospital Association.
O'NEAL, J.
This is an appeal from an order of the district court of Garfield county, Okla., admitting to probate the will of Henry Heitholt and a codicil thereto.
Deceased, Henry Heitholt, a resident of Garfield county, Okla., and having property, both real and personal, in said county, died in Elk City, Okla., August 5, 1941. He left a will, executed April 3, 1940, and a codicil thereto, executed March 26, 1941. The will and codicil were offered for probate in the county court of Garfield county by Herman Adolph Duerksen, the executor named in the will.
The State of Oklahoma, by and through the Attorney General, filed a protest, or objection, to the probate of the will, alleging, in substance, that Henry Heitholt, deceased, at the time the will was executed, was about 86 years of age, infirm and without the mental capacity to make a will; and that said will was made under, and as the result of, undue influence exercised by James Wilson, the attorney who drew the will. This protest was filed on the theory that the testator had no heirs, and that the estate would therefore escheat to the State of Oklahoma.
The matter was heard in the county court, and Herman Adolph Duerksen, the executor, and a number of beneficiaries *353 under the will, including George Mangold, a brother of the first wife of decedent, appeared in support of admission of the will to probate, and the State of Oklahoma appeared as contestant.
After hearing, the county court entered an order admitting the will to probate. The State of Oklahoma appealed to the district court. Hearing was had in the district court after an unsuccessful motion of the State for a continuance.
An order admitting the will to probate was entered and the State appealed to this court solely on the ground that the court had erred in overruling its motion for a continuance.
On appeal the order of the district court was reversed on that ground alone, and the cause was remanded to the district court. State v. Duerksen, Ex'r, et al., 191 Okla. 670, 132 P.2d 649.
Thereafter, in the district court, George Mangold and Edna Mangold, a niece of the first wife of Henry Heitholt, deceased, each of whom were given $3,000 under the will, filed an amended answer, wherein they alleged that in the event the will be denied probate, they and other kindred of the first wife of Henry Heitholt, deceased, would take the property as heirs of Lavinia Mangold Heitholt, the first wife of deceased. They joined the State of Oklahoma in contesting the will and adopted the allegations of the State of Oklahoma.
Harry O. Glasser appeared as Special Counsel for the State. The issues were tried to the court, resulting in extended findings of "evidentiary facts" and findings of "ultimate facts", and an order sustaining the will and codicil and ordering the same admitted to probate, and the State of Oklahoma appeals.
The contentions are that the findings of fact by the trial court are against the clear weight of the evidence and that the order of the court sustaining the will and codicil, and admitting same to probate, is clearly against the weight of the evidence and contrary to law. This requires an examination of all the evidence. The record contained some 4,000 pages of pleadings, orders, oral testimony, and documentary evidence. Aside from the question of the factum of the will and codicil, much of the record goes to side issues, such as the question of whether the State has the right to be heard as to the competency of the testator and undue influence before a showing that the testator left no heirs; the right of the Northern Oklahoma Co-operative Hospital Association, a corporation, to take under any will, and the right of George W. Mangold, one of the beneficiaries under the will to change from proponent of the will in the county court to a contestant of the will in the district court. Most of these questions have no place in a proceeding of this kind. It has been repeatedly held in this state that the sole question involved when a will is offered for probate is the factum of the will; that is, has the will been executed and attested in the manner and form required by the statutes, and was the testator competent to make a will at the time he made it, and was the testator free from undue influence, fraud or duress in making the will? Armstrong et al. v. Letty et al., 85 Okla. 205, 209 P. 168; Mantz v. Gill, 147 Okla. 199, 296 P. 441; Brock v. Keifer, 59 Okla. 5, 157 P. 88, and Courtney et al. v. Daniel et al., 124 Okla. 46, 253 P. 990.
In this case the record shows that the will and codicil offered for probate were executed and attested in strict compliance with the requirements of the statute. There is no contention to the contrary, and that question is not involved in this appeal. That leaves but two questions: (1) Did the testator, Henry Heitholt, have the mental capacity to make a will at the time the will was executed and at the time the codicil was executed? (2) Was the testator, Henry Heitholt, free from undue *354 influence, fraud and duress in the execution of the will and codicil?
We consider first the question of undue influence. The State relies principally upon the fact that the law firm of Wilson & Wilson had represented Henry Heitholt as his legal advisor for sometime before the will was written, and that James Wilson, a member of the firm of Wilson & Wilson, prepared and drafted the will and codicil, and had theretofore prepared a number of wills and codicils for Henry Heitholt and that the will provided that James Wilson should be the attorney for the executor and his fee was fixed at 1 per cent of the appraised value of the estate in a former will, and the same provision was contained in the will offered for probate, except the attorney's fee was fixed at 2 per cent of the appraised value of the estate; that a short time before the will was executed James Wilson had prepared an application and obtained a charter of incorporation for the Northern Oklahoma Co-operative Hospital Association, which was made the residuary beneficiary under the will; that the will contained a provision that in case the Northern Oklahoma Co-operative Hospital Association should not be in existence and should be dissolved at the time of testator's death, then that part of the estate given to said Northern Oklahoma Co-operative Hospital Association shall be given to the first co-operative hospital association formed in the city of Enid within two years after the will is admitted to probate, and organized and operated upon a co-operative plan substantially similar to Farmers Union Co-operative Hospital of Elk City, Okla., provided that before any such hospital should be qualified to take under the will that the same must be approved as sufficient and bona fide by the attorney for the estate  James Wilson or Wilson & Wilson.
The record in this case on the question of undue influence, duress or fraud is in most respects similar to the facts and circumstances as to the same question in Kindt et al. v. Parmenter et al., 83 Okla. 116, 200 P. 706. The principal differences are that in Kindt v. Parmenter, supra, the corporation that was organized and incorporated by Parmenter was a church instead of a co-operative hospital, and there was no beneficiary named in case the church corporation was not in existence at the time of the death of the testator, and in that case the attorney who wrote the will was named as executor of the will instead of attorney for the executor.
In Kindt et al. v. Parmenter et al., supra, it was held:
"The mere fact that a trusted attorney of a testator who bequeathed his property to a church of which both attorney and testator were devout members, drew the will and was named therein as executor does not constitute the attorney a beneficiary under the will nor raise a presumption of undue influence." And:
"The rule under which undue influence is inferred from a confidential relation between the testator and the person charged with procuring the will, has no application where such person took nothing under the will." And:
"While undue influence in the making of a will may be shown by circumstantial evidence, such evidence must amount to proof, and is insufficient when circumstances are not proven which are inconsistent with the claim that the will was the spontaneous act of the testator."
In that case the issue was tried to a jury and the following question was submitted to the jury:
"At the time the said Abraham F. Kindt executed the will in controversy, was he acting in the execution of said will under undue influence? ..."
The jury answered that question in the affirmative, but the trial court set aside the finding of the jury and found as a fact that the testator Kindt was free from undue influence and admitted the will to probate. This court *355 on appeal affirmed the finding and order, and in the opinion said:
"Although it was shown that Parmenter was a trusted attorney and legal advisor of Mr. Kindt and a prominent member of his church, he was not a beneficiary in the will, and this, coupled with the fact that he was named as executor, was not sufficient to raise a presumption of undue influence."
The same may be said as to the relation of James Wilson and Henry Heitholt. Aside from the facts and circumstances above noted, there is absolutely no evidence in the record tending to prove undue influence, duress or fraud. The finding of the trial court on that question must be sustained.
That leaves only the question of mental capacity of testator, Heitholt. On that question there were many witnesses on both sides, some thirty or forty for the proponents and about thirty for contestant. There was some documentary evidence. Some 3,000 or more pages of the record go to the capacity of Heitholt to make a will and it is obvious that the record is to extended to be reviewed or discussed in detail.
The findings of fact and conclusions of law of the trial court cover some 87 pages in the record. The first part of the findings goes to the question of whether testator left any heirs and on a review of the evidence, the court found that the testator, Henry Heitholt, left no heirs and for that reason the State was entitled to contest the will. The trial court in his findings of "evidentiary facts", reviewed the evidence at length and pointed out the weakness of the testimony of some of the witnesses for both the proponents and the contestants, and also pointed out the apparent interest or bias of some of the witnesses.
The first fourteen paragraphs of the court's "findings of ultimate facts" and conclusions of law go to questions concerning which, for the most part, there is no controversy. The sixteenth and twenty-sixth paragraphs state the ultimate findings of the court on the question of mental capacity and are as follows:
"Henry Heitholt, at the time he executed the will and at the time he executed the codicil, was an old man; he was suffering to some extent from the debility which accompanies old age; his eyesight was bad; he occasionally suffered from loss of memory; but the vast preponderance of the evidence submitted in this record discloses that his physical condition, his poor eyesight, his advanced age, were not sufficient to materially affect the normal condition of his mind. He was mentally alert until the time of his death."
Further:
"The court finds that at the time of the execution of the will on April 3, 1940, and at the time of the execution of the codicil on March 26, 1941, Henry Heitholt was of sound mind, as that term is defined in the statute of this state and as defined by the Supreme Court of this state, and that said will and said codicil were executed by the testator of his own free will and in the absence of duress, menace, fraud or undue influence, and that the said will and codicil constitute the last will and testament of Henry Heitholt, deceased, and that the said last will and testament, as such, is entitled to be admitted to probate."
Careful review of the entire record, and the testimony of the witnesses who were in the best position to know the mental capacity of testator, will disclose that the findings of fact made by the court are not clearly against the weight of the evidence, but, on the contrary, are supported by the vast preponderance of the evidence.
As to the medical witnesses, Dr. Shadid and Dr. O'Brien, who treated testator in the hospital at Elk City some years before he executed the will and who were witnesses produced by the State, and Dr. Ross, who treated testator in the hospital at Enid several weeks shortly after the codicil was executed *356 in March, 1941, all testified clearly and unequivocally that in their opinion testator was fully competent to make the will. Also, many of the witnesses who were closely associated with testator were of the opinion that testator was competent to make the will.
It appears from the record, as a whole, that testator was, at the age of 86 or 87 years, as alert and competent mentally in business affairs and transactions as most businessmen of younger years. Certainly he had the knowledge and understanding of the nature, purpose and consequence of his acts in making the will and codicil, and the nature and extent of the property to be disposed of. He was able to understand and recollect his relationship to the objects of his bounty and to those, if any, who would naturally have some claim to his remembrance and bounty. He was able to understand the manner and effect of the disposition of his property which he desired to make according to a fixed purpose and a desire of his own.
We fully concur in and approve said findings of fact. We also concur in the conclusions of law, insofar as they go to the factum of the will.
The trial court, in effect, construed the will as creating a trust and requested the county court of Garfield county, upon the conclusion of the administration proceedings, to "certify the trust estate, together with all papers and documents pertaining thereto, to the district court of Garfield county, Oklahoma, sitting as a court of equity, so that said district court may supervise the judicial and administrative matters in giving effect to the terms of said last will and testament, and to preserve the trust estate as provided by law."
We think the order construing the will as creating a trust is premature. In Brock v. Keifer, supra, it is held:
"In a proceeding to probate a will, the court cannot construe or interpret the will or distinguish between valid and void dispositions. If the will be legally executed and proved, and not successfully attacked for want of testamentary capacity, undue influence, fraud, or duress, it must be admitted to probate."
In re Allen's Will, 44 Okla. 392, 144 P. 1055, the court made the following statement:
"It will be noted that the conclusion to be reached upon a hearing of the contest is whether the will shall be rejected or admitted to probate. There is no authority conferred by statute by which the court, upon a hearing of the contest, has authority to construe the will or adjudicate upon the rights of the parties or the validity of the disposition thereof."
That statement is quoted with approval in Brock v. Keifer, supra.
By the above, it is shown that the court in the instant case was without power to construe the will as to any of its provisions or whether or not it created a trust.
That part of the conclusions of law of the district court relative to the creation of a trust was beyond the power of the court in the present proceeding, and the same is disapproved and stricken. Whether the will creates a trust is a question for future determination by appropriate proceedings. In all other respects, the findings and order of the district court are affirmed.