GEORGE C. WARD, appellant,

*v.*

S. THOMAS WILCOX, executor, et al., respondents.

[Submitted March 18th, 1902. · Filed May 9th, 1902.]

1. In a contest before an orphans court respecting a paper-writing propounded for probate as the last will and testament of a deceased person, that court is not bound to deny probate because the proponent has not produced and examined both of the subscribing witnesses thereto, or accounted for his inability to do so, by legal evidence. If the one subscribing witness called and examined completely establishes the due execution thereof as a will, and there is no contradictory evidence, the court may admit the will to probate thereon and its decree will not be reversed.

2. The instrument offered for probate was shown by the evidence to be in the handwriting of testatrix. Upon inspection there is disclosed a manifest alteration, which is unnoted. The alteration was made by the erasure of a word in one of the bequests and by writing thereon the word "ten," which is also shown to be in the handwriting of the testatrix.— *Held,* that assuming such apparent and unnoted alteration raises a presumption that it was made after execution, such presumption may be overcome by competent and sufficient evidence that it was made before execution; *held further,* that statements of testatrix made shortly before the execution are admissible in evidence in respect thereto.

3. The instrument in question was drafted by a family friend and legal adviser of deceased, from instructions given by her. A type-written copy was sent to her, and, as arranged, she copied it in her own handwriting. As so written by her, the bequest was of the sum of $2,500. When her legal adviser attended to witness the execution, she informed him that she had increased the amount of that bequest, and gave reasons for so doing, which might have operated to induce an increase. An inspection of the paper does not justify any inference of a second obliteration or erasure.

Ward *v.* Wilcox.

—*Held*, that the evidence is sufficient to overcome any presumption that the alteration was made after execution, and to establish that the paper-writing was, at the time of the execution thereof, in the same condition that it was when offered for probate.

On appeal from a decree of the Essex county orphans court admitting to probate a paper-writing as the last will and testament of Anna B. Ward, deceased.

*Mr. Albert C. Pedrick* and *Mr. Elvin W. Crane,* for the appellant.

*Mr. Francis Child* and *Messrs. Guild, Lum & Tamblyn,* for the respondents.

MAGIE, ORDINARY.

From the opinion delivered in the orphans court in disposing of this cause it appears that appellant, who was a caveator against the probate, claimed that the proofs before the court established that the alleged testatrix was wanting in testamentary capacity at the time she executed the writing in question. Notwithstanding the brief submitted in this court is silent upon that claim, I have deemed it my duty to carefully review the evidence. The result of my examination has been to lead me to an entire concurrence with the conclusion of the orphans court—that Miss Ward possessed testamentary capacity, and that the instrument executed by her cannot be denied probate on that ground.

In the brief before me reliance for the reversal of the decree appealed from is placed upon two grounds, which I will now consider.

The first ground is expressed in these words:

"Because but one of the subscribing witnesses was called and sworn to prove the will, whereas it was the duty of the respondents to produce and call both witnesses to the will, or else account for their inability to do so by legal evidence."

The paper-writing in question discloses that there were two witnesses to its execution, viz., William B. Guild, Esq., and Miss

Laura M. Jenkins. The first was called and examined as a witness, the second was not called nor examined. Nor was it made to appear that she had been subpœnaed or required to attend as a witness. As if to account therefor, the proponents presented to the court and had marked as an exhibit and entered upon the notes of the trial two certificates, made at different times while the matter was proceeding, the last date being on the day the evidence was closed. They purported to have been made by a physician, who certified that he was attending Miss Jenkins for a serious disease, and that, in his opinion, she was not able to appear as a witness. While it seems to have been admitted that the witness was residing in Newark, there was no other proof offered of her inability to testify.

As the certificates possessed no probative force whatever, it is obvious that the inability of the witness to be examined was not made out by legal evidence, and if the proposition of appellant correctly states the rule of duty of proponents, they were derelict.

Since, however, the caveator could have called the witness and examined her, and probably the court, of its own motion, could have done so, whether the dereliction of duty on the part of the proponents would have justified a rejection of the will, if its due execution had been completely established by the evidence of the other witness who was examined, would be open to question.

But I do not think the proposition maintained by appellant correctly states the rule of law upon the subject. In my judgment there is no hard and fast rule requiring a proponent of a will under an ordinary caveat to produce before the orphans court all the witnesses to the alleged will, or show, by legal evidence, that he was unable to do so.

When the court of chancery was called upon to establish a will, spoliation of which was charged, Chancellor Pennington laid down the rule that all the witnesses thereto, if within the power of the court, must be examined. But he qualified the rule in that case by the statement that if the witnesses be dead or insane, or without the jurisdiction of the court, the will might be established without their evidence.

But the case of a spoliated will, the contents of which must be built up, as it were, from the recollection of witnesses, differs very materially from a case in the orphans court under a caveat against admitting to probate a paper actually existing and propounded for probate. There has been conferred on that court jurisdiction to determine whether the paper propounded is a will—*i. e.*, a paper executed with the formalities required by the statute by a person capable of making it. The burden of proof devolves, of course, upon the proponent. When he presents proof sufficient to justify the court in finding that the paper was duly executed, he may rest his case. If he presents such sufficient proof, the court may act upon it, unless it is met and overcome by counter proof. The same ordinary, in *Whitenack* v. *Stryker, 1 Gr. Ch. 15,* declared that it was not indispensable that one propounding a will for probate should produce all the witnesses, provided those produced prove its due and legal execution.

It must be conceded that such has been the practice in these cases, and there is no trace, in any of the serious litigations upon the existence of wills, of a contrary rule, such as is now claimed to be the true rule. Surrogates, when no caveat is filed, admit wills to probate on clear proof by one witness. Contests initiated by caveats have been constant, yet no such rule has been applied. See *Snedeker* v. *Allen, 1 Penn. 32; Den* v. *Mitton, 7 Halst. 70; Den* v. *Matlack, 2 Harr. 86.*

The evidence of Mr. Guild was not only complete in the proof of due execution and of testamentary capacity, but he also proved that Miss Jenkins signed her name in his presence, appending it to an attestation clause which averred the performance of all the acts requisite to due execution. If she were dead or insane, or out of the jurisdiction, such proof would be considered as establishing her averment of regular execution.

The decree cannot be disturbed on this ground.

The remaining contention in favor of reversal of the decree appealed from is that the orphans court erred in admitting to probate the paper-writing in question, because an inspection thereof disclosed an evident alteration therein, which must be presumed to have been made after its execution, and that such

presumption had not been overcome by competent and sufficient evidence.

If this contention can be successfully maintained, it will be open to question whether the decree should be wholly reversed and the whole instrument should be denied probate, or whether the decree should be modified so as to admit to probate all the instrument propounded except the clause in which the alteration appears.    On this point no argument has been made, and no opinion need be expressed.

With respect to the fact upon which this contention is grounded, I have carefully inspected the disputed paper, which, the evidence shows, was written by Miss Ward.    This inspection leads me to the same conclusion which the judge of the orphans court arrived at, viz., that, in the bequest expressed in these words, "I give to my faithful maid Lizzie Dow the sum of ten thousand five hundred dollars," the word "ten" is written over an erasure, the marks of which are plainly visible, and which has diminished the thickness of the paper.    There are some indications that the word "thousand" has been retraced without erasure.    What word was erased from the space now occupied by "ten" is not apparent on inspection, but the uncontradicted evidence, as will hereafter be shown, discloses that the word "two" was once there.    By comparison of the handwriting of the paper with the word "ten," it may be fairly concluded that that word was written by Miss Ward; and Mr. Guild, who was familiar with her writing, expresses, in his evidence, the opinion that "ten" is in her handwriting.

With respect to written instruments upon which actions at law are maintained, it is settled in this state that there is no presumption of law that an alteration apparent on the face thereof was made after execution, but that it is a question for the jury to settle whether the alteration was made before or after execution.    *Den* v. *Wright, 2 Halst. 175; Cumberland Bank* v. *Hall, 1 Halst. 215; North River Co.* v. *Shrewsbury Church, 2 Zab. 424; Hunt* v. *Gray, 6 Vr. 227; Jones* v. *Crowley, 28 Vr. 222.*

In *North River Co.* v. *Shrewsbury Church, ubi supra,* it is declared that the presumption is that such an alteration was

made before execution. When equity is asked to decree the amendment of a written instrument on the ground of a fraudulent alteration after execution, proof is required that the alteration was subsequent to execution. *Putnam* v. *Clark,* *6 Stew. Eq. 338.*

By the provisions of section 21 of the English Wills act (*1 Vict. c. 26*) it is provided that no obliteration, interlineation or other alteration made in any will after execution shall have any effect, except so far as the words or effect of the will before such alteration shall not be apparent, unless such alteration shall be executed in like manner as is required for the execution of the will, and the manner in which this may be done is particularly set forth in that section. In cases arising upon wills made before as well as after the adoption of that act, the English courts held that where alterations are apparent upon the face of the will the presumption is that they were made after execution. A distinction is made between such alterations in wills and in other documents, on the ground that an alteration of the latter after execution involves either fraud or crime, and no presumption of either can be made, while a testator may alter his will at his pleasure, without committing either fraud or crime. *Doe, Shalicross* v. *Palmer, 16 Q. B. 747; Cooper* v. *Bockett, 4 Moo. P. C. C. 419; Greville* v. *Tylee, 7 Moo. P. C. C. 320; Doe, Tatner* v. *Catomore, 16 Q. B. 745.*

Counsel for appellant have not cited to me any American cases upon the subject of the presumption in respect to alterations apparent on the face of a will when offered for probate or relied on for relief. I have not deemed it necessary to spend time in examining our authorities. Text witness seem to agree that the presumption is of an alteration after execution. *Schoul. Wills 435; Underh. Wills. 268; Page Wills 431, 432; Tayl. Ev. 180, 968; 1 Jarm. Wills ( R. & T.) 304.* The common practice to note, at the foot of a will about to be executed, any alteration, in such a manner as that the execution by the testator and the attestation by the witnesses may include and recognize them as theretofore made, will, I think, justify a presumption that unnoted and unattested alterations were made after execution. So I shall assume, without deciding, that, upon the production of

the paper in dispute before the court, with a plainly apparent alteration, a presumption was at once raised that such alteration had been made by Miss Ward after its execution. Nor do I deem it necessary to decide what effect would have been produced if such presumption had been left unrebutted.

That such a presumption as I have assumed may be overcome and rebutted by competent and sufficient evidence justifying the conclusion that the apparent alteration did, in fact, exist at the time of the execution of the paper, is in accord with reason and the authorities above cited.

The evidence before the orphans court established, in my judgment, the following facts: Mr. Guild, one of the witnesses to the paper in dispute, was requested by Miss Ward to prepare a will for her. She gave him instructions for its preparation, and it was arranged between them that he should prepare the will and send her a typewritten copy thereof. Mr. Guild preferred not to have a typewritten will, and the arrangement was that Miss Ward should copy, in her own handwriting, the typewritten draft which Mr. Guild was to send her, and that Mr. Guild should attend on the following morning for the execution of the will. One of the instructions given to Mr. Guild was for a bequest to a maid of Miss Ward, named Lizzie Dow, for $2,500, and the typewritten draft contained such a bequest. The next morning Mr. Guild went to the house of Miss Ward and found that no other witness was in attendance, so that the execution of the will was postponed, and he arranged with Miss Ward that he would attend on the next morning. He, however, examined the copy of the will which had been made by Miss Ward, according to the arrangement, and was in her own handwriting, with which Mr. Guild was entirely familiar. He found it to be a correct copy of the typewritten draft. He had been the lifelong friend and legal adviser of Miss Ward's father, and had drawn his will. He had known Miss Ward from early childhood, and had frequently seen her, having been a constant visitor at her father's house. The next day Mr. Guild attended, according to the arrangement, and another witness was present, a Miss Jenkins. Miss Ward requested Mr. Guild to accompany her to another room, and there told him that since he had been there on the

previous day she had had a talk with her father with regard to the provision made by her for Lizzie, and that she had added to that provision. Mr. Guild told her that, in his opinion, she had done pretty well for Lizzie before any addition, and she replied that the matter had been talked over between her father and herself, and that when he made his will Mr. Guild knew that he then requested her to provide for Lizzie, and that both her father and herself felt that she had been faithful and kind, and both her father and she believed that she and Lizzie would continue to live together during their joint lives. Mr. Guild did not examine the will, nor ascertain what the increased amount was, nor how the increase was indicated. He did not take the precaution to examine and note the alteration, as he might well have done, for greater accuracy. But if he be believed, the testatrix announced that she had increased the bequest to Lizzie above that which had been contained in the draft of the will which he had examined. It was not necessary for Miss Ward to explain to Mr. Guild the reasons which induced the increase, nor ought the court to inquire with respect to the reasons inducing the will of a proposing testatrix, because every person competent to make a will may do with his property what he desires to do. But where a bequest, of the character of the one now in question, is increased by so large a sum, it is not incompetent or improper to consider the motives that may have induced the testatrix to make the increased bequest. Miss Ward proceeded, at the same interview, to give further reasons operating upon her mind, arising from the fact that her sister's children, who were provided for by the will, were well cared for, and her brother had no children, so that she felt that she might increase the legacy to the faithful maid to an amount which she thought proper to give her.

Upon these facts I think it a necessary deduction that, at the time of her conversation with Mr. Guild, the bequest of $2,500 to Lizzie Dow, which Mr. Guild had seen in the draft of the will, had been increased, and that by her. The scrutiny of the will forbids any notion that there have been two alterations and erasures in the clause. The erasure consisted in the complete obliteration of the previously written "two," and there was

superinduced, in Miss Ward's handwriting, the "ten." Any subsequent erasure upon which the writing has been made would be unmistakably indicated. Under these circumstances I deem it proved that when the paper was executed a few minutes after, it was in the condition in which it now is, and contained the bequest to Lizzie Dow for $10,500.

It is contended that Mr. Guild's recollection of the occurrence, to which he testified with great clearness, may not be relied on. The claim is that, upon being confronted with the will shortly after the death of Miss Ward, he made statements variant from the testimony, and declared that he did not know the contents of the will, having made the draft and left the bequests in blank.

The account of this interview comes from the caveator and one Mr. Doughty, who accompanied him to Mr. Guild's office. Mr. Guild repudiates the statement then said to have been made by him. I have no hesitation in saying that the alleged variance between Mr. Guild's statements and his words as testified to by the caveator and Mr. Doughty does not in the least shake my reliance upon Mr. Guild's sworn testimony, given after an opportunity to refresh his memory and to recall what had really happened. Such a variance may be well explained by the different impression produced upon the witnesses by the statement actually made. If, as they say, the conversation was confined to the bequest made to Lizzie Dow, Mr. Guild may have stated that he did not know what the amount of that bequest was, which statement is in entire agreement with his testimony, and that statement may have been misunderstood.

The statements of Miss Ward, testified to by Mr. Guild, are, in my judgment, competent evidence on the question when the alteration in the paper was, in fact, made. If they had been observations to Mr. Guild after the execution of the paper, I think they would have been inadmissible, but statements made at the time of the execution, or within a reasonable time prior thereto, in my judgment, are competent as tending to fix the fact of an alteration, and, in this case, the fact that it increased the legacy to a particular person.

The result is that the decree should be affirmed.