### McELHINNY v. TRINKLE et al.

No. 11450

Opinion Filed July 17, 1923.

**1. Appeal and Error—Review — Equity Cases.**

In an equitable action this court will weigh the evidence, and if the judgment of the trial court is clearly against the weight thereof, will render, or cause to be rendered, such judgment as said court should have rendered.

**2. Wills—Contest—Burden of Proof.**

The proponents of a holographic will having made the preliminary proof of the execution of the will by two or more credible witnesses, who were familiar with and knew the handwriting and signature of the testator; thereupon, in case of a contest, the burden shifts to the contestant to prove the matters set forth in the objections filed.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court. Logan County; Arthur R. Swank, Judge.

In the matter of probate of will of W. M. McElhinny; Minnie McElhinny, proponent, and Lizzie M. Trinkle and another, protestants. Judgment denying probate of will, and proponent brings error. Reversed and remanded with directions.

John Adams, for plaintiff in error.

McKeever & Moore, for defendants in error.

Opinion by JONES, C. This is a suit in equity in which it is attempted to probate the holographic will of W. C. McElhinny, deceased. The petition to probate said will was first filed in the county court of Logan county, state of Oklahoma, by the widow, Minnie McElhinny, plaintiff in error herein, and after a trial in the county court, the county judge, on the 4th day of January, 1919, admitted said will to probate, overruling the objections of the protestants, Lizzie M. Trinkle and Eunice Stockton, defendants in error.

An appeal was taken by the protestants from said order of the county court to the district court of Logan county, and was tried de novo in April, 1919, and on the 26th day of April the district judge rendered judgment denying the probate of said will, from which order and judgment of the district court, the plaintiff in error, Minnie McElhinny, filed her motion for a new trial, and evidence was offered in support of the contention made and set up in the motion for a new trial on September 6, 1919, in the absence of the defendants in error, they having failed to appear in conformity with the order setting the matter on said day. The court entered an order granting to the said Minnie McElhinny a new trial in said case, and on Monday, the 3rd day of November, 1919, defendants in error filed a motion to set aside the order of September 6, 1919, granting plaintiff in error a new trial, and offered evidence in support of the contentions made in the motion to set aside the order of September 6, 1919, and for the purpose of refusing the testimony theretofore had on the motion for a new trial; and the court, on final hearing of said matter, granted the motion on November 3, 1919, and set aside the order of September 6, 1919, granting plaintiff in error a new trial, from which order the plaintiff in error gave notice of appeal, and the case comes here on appeal.

The will in question is what is known as a holographic will, and is recognized in this jurisdiction. Section 11230, Comp. Stat. 1921, provides:

"A holographic will is one entirely written, dated and signed by the hands of the testator. It is subject to no other form, and may be made in or out of this state, and need not be witnessed."

The author of Ruling Case Law, article 116, page 161, states:

"The validity of such a will owes its origin to the fact that a successful counterfeit of another's handwriting is exceedingly difficult, and that therefore the requirement that it should be in the testator's handwriting would afford protection against a forgery of this character."

: The contention made, as disclosed by the record in the trial heretofore referred to, by the protestants of the will was that it was a forgery, and not, in fact, the will of the said W. P. McElhinny, deceased. And while they do not directly allege that the same was forged by Minnie McElhinny, the widow of the deceased, that in fact was their contention. The testimony of numerous witnesses was offered, and many letters and instruments showing the writing and signature of the deceased, W. P McElhinny, and also the writing and signature of the widow, Minnie McElhinny, were offered in evidence and are now contained in the record in this court. The testimony of Mrs. McElhinny and Mr. Byers and Mr. Stobaugh, bankers with whom the deceased had done much business, all of whom were familiar with the signature and writing of the deceased, identified the signatures and writings contained in the instruments offered as the will as being that of W. P. McElhinny, deceased. Other witnesses, who were neighbors and associates of the deceased, testified to conversations had with the deceased, ranging from three and four months to 18 months prior to his death, relative to what disposition he desired to make of his property and worldly effects, and in which he stated a desire to take care of his wife and child, Wilmer McElhinny, being a girl three years of age at the time of his death, and the statements made, as testified to by the witnesses are in keeping with the declarations found in the will as to the disposition of his property.

Considerable evidence was offered to show the kind and character of papers found in the grip of the deceased, where he usually kept most of his valuable papers, and to the effect that no will was found in his grip or clothing at the time of his death, and in fact the evidence discloses that the will in question was not found until some 15 or 16 months after the death of the said W. P McElhinny, and was found hidden away under a sill in the smokehouse, enclosed in a fruit jar, in which other papers known to have belonged to the deceased were also found. There was also offered the testimony of two handwriting experts, one of whom was of the opinion that the writing found in the will and the signature thereto attached were genuine, and that of the said W. P. McElhinny, deceased, while the other is of the opinion that it was a forgery, and that neither the writing nor the signature was genuine and that of the said W. P. McElhinny, deceased.

Mrs. Trinkle and Mrs. Stockton, daughters of the deceased, were called as witnesses and testified that they did not believe the writing and signature to be genuine and that it was not, in fact, the writing of their father, W. P. McElhinny, deceased.

Evidence as to the genuiness of writings and signatures is seldom satisfactory or conclusive in its nature, but in this case, we are inclined to the opinion that the

preponderance of the evidence is to the effect that the will is genuine, and that it was the will of and executed by W. P. McElhinny, deceased.

In addition to the evidence as disclosed by the case-made, the court has examined the exhibits offered in evidence in the lower court, which are numerous and voluminous, consisting of many checks, letters, and some instruments which are known to be, and admitted as being, the genuine writings and signatures of W. P. McElhinny, deceased. And from an examination of these exhibits and by way of comparison, we find that the will in question and the letters attached thereto, contain many characteristics and distinct earmarks that are found and are noticeable in the genuine writings offered of the said W. P. McElhinny, deceased. The will, and seven letters attached thereto which make reference to the will, and which were evidently written at the same time that the will was written, are claimed to be forgeries by the protestants of this will. They all are original instruments, no contention being made that they were copies of any instruments in existence. The language and verbiage of some is necessarily original in its nature, and the writing in all of these instruments, to say the least, is very similar, and look very much like the writings offered, known to be genuine, and as that of the said W. P. McElhinny, deceased.

Mrs. McElhinny, the widow, according to the evidence, was not a woman of any extraordinary attainments or acquirements, and it is not contended that she was an expert in handwriting, and as is shown by her handwriting in many letters written by her and offered in evidence, she was, in fact, not an expert, but wrote just an ordinary hand. Her occupation for many years has been that of the ordinary housewife. She had no opportunity or training which would enable her to become adroit or an expert in handwriting and in the execution of forgeries, and we cannot conceive that a woman of this character could so adroitly forge original instruments of the length of the various instruments offered in evidence as forgeries, and so execute them as to retain all of the striking characteristics of the handwriting of her husband, throughout the entire writing contained in such instruments.

We find from an examination of the instruments admitted to be genuine, that the deceased invariably used a large or capital "K" in all of his writing; that in all words beginning with the letter "S" he made the "S" about twice the height of the ordinary vowel. His "Y's" all have a striking similarity in that they somewhat resemble the figure "7." The letter "a", when used in the middle of a word, or at any place other than at the beginning, is generally disconnected, and there are numerous other peculiar characteristics to which attention might be called, all of which, we find, are clearly perceivable in the writing known to be genuine, and likewise found in the will and letters thereto attached, which protestants contend are forgeries.

The same similarity occurs in the manner of spelling; the word "fulfill" is spelled "fullfill" in the writing known to be genuine and likewise in the will and letters thereto attached. The word "seems" is generally spelled "seams" in the exhibits offered as genuine, and it is spelled likewise in the instruments which are contended by the protestants to be forgeries.

The evidence further discloses, as has heretofore been noted, that the deceased, on various occasions, expressed his desire to take care of his little daughter, Wilmer, the issue of the last marriage, and reference to the fact that she must be raised and educated and that probably his death would ensue before she reached her majority and before she had completed her education, and we find that this desire is paramount in the will, and it provides for the child, Wilmer, and the desire to take care of and provide for those with whom we are associated in our declining years and the young and tender, and those who are most generally in need of financial aid and assistance, is a natural inclination and desire of the average and ordinary man, and in keeping with the universal idea and conception of justice. And, in our judgment, the will certainly conforms to those well-known rules, and taking all of these matters into consideration, we are of the opinion that the will in question is genuine, and that the signature thereto attached is that of W. P. McElhinny, deceased, and that the evidence on the part of the protestants is not sufficient to establish forgery, and that the will should have been admitted to probate.

We therefore reverse the judgment of the district court, and remand the case, and direct that it be proceeded with in accordance with the judgment and views as expressed in this opinion.

By the Court: It is so ordered.