In re CRAVENS' ESTATE.

CRAVENS et al. v. CRAVENS.

No. 34395.  March 18, 1952.

*242 P. 2d 135.*

G. O. Wallace, Wewoka, for plain-
tiffs in error.

A. C. Kidd, Wewoka, and Marvin
Wooten, Konawa, for defendant in er-
ror.

HALLEY, V. C. J.  John S. Cravens
was a prosperous farmer of Seminole
county, Oklahoma. He had little formal
education. He died on October 12, 1946,
and left a wife, four sons, and one
daughter, all adults. Immediately fol-
lowing his death, a search was made
for a will, and none was discovered;
but upon inquiry to the Secretary of
the Oklahoma Consistory at Guthrie,
it was discovered that a will of John
S. Cravens, dated July 10, 1919, was on
file with the Secretary. This will was
admitted to probate in the county court
of Seminole county. On February 23,
1947, Elsie Cravens, son of John S.
Cravens, deceased, died, leaving as his
sole heir and devisee his wife, Louise
C. Cravens. On November 3, 1947,
Martha Cravens, the widow and propo-
nent in this action, filed statutory con-
test to the Consistory will provided for
by sec. 41, Title 58, O. S. 1951, and
at the same time filed her petition for
probate of a subsequent will dated Sep-
tember 20, 1946, which is the will under
consideration in this appeal. The county
court of Seminole county, on January
7, 1948, entered an order admitting the
will of September 20, 1946, to probate,
and issued letters of administration to
A. R. Cravens and R. C. Cravens.
Louise Cravens, as contestant, per-
fected an appeal to the district court
from the county court's order admit-
ting the second will to probate, and
on April 5, 1949, the district court of
Seminole county entered an order and
judgment sustaining the contest of

Louise Cravens, and judgment was entered reversing and setting aside the action of the county court in admitting the will of September 20, 1946, to probate. From this judgment of the trial court an appeal was perfected by Martha Cravens as the widow and proponent of the will and A. R. and R. C. Cravens as executors and administrators. Inasmuch as the parties occupy the same positions in this court as in the court below, they will be referred to as "proponents" and "contestant."

The will in question was found in a room in the home of the deceased, John S. Cravens, which he used as an office as well as sleeping quarters, by A. R. Cravens, his oldest son, who was searching for a recorded deed which his father had given to the daughter. The will was in a volume of the 1937 Session Laws. It was signed by John S. Cravens and witnessed by G. M. Brummett and Hobart Armstrong, who lived near the testator. An inspection of this will reveals that there had been erasures made in it, and also that certain clauses of the original will had been deleted by typewriting the letter "X" through the words. The contestant obtained permission from the court, at the time of the trial, to withdraw this will and submit the same to an authority on questioned documents. Through modern scientific methods, the expert was able to reproduce the will as it was originally written, before the erasures and deletions were made.

The expert testified that the signature of John S. Cravens was signed to the will soon after it was typed, because the "h" in the word "John" smeared a little due to the fact that there was still some glycerin in the typewritten letter "n" where the ink in the letter "h" came into contact with it; and he testified that this glycerin dries out after a short period of time. He further testified that the changes which were written over the erasures, as well as certain new parts added to the will, were written by a different person than the one who typed the original portions of the will. He also testified that the

parts of the will in which rows of X's crossed out the original words were typed by a different person than the one who typed the original will. His testimony shows conclusively that the attestation clause on the will offered for probate was written by a different person than the one who typed the original will, and at a different time than was the original will.

The attesting witnesses both testified that the will appeared to be the same at the time it was presented to them, after the death of John S. Cravens, as it was at the time they signed it as witnesses. One of the attesting witnesses testified that the testator put the will back into the typewriter and put the date on it. According to the testimony of the expert, the date was put on at the same time that the will was originally written, and could not have been put on the will after its original typing. There was testimony offered by the contestant that the attesting witnesses' reputation for truth and veracity in the community in which they lived was bad.

There is no question but that the will, as originally written, was altered, as erasures and other alterations can be seen by the naked eye. This original will was somewhat similar to the Consistory will, except that it provided a dowry for the widow of John S. Cravens; and it is to be remembered that John S. Cravens came from Arkansas, where they have dower rights. In the subsequent will, before portions of it were deleted, Orville, or Rod, was disinherited. The law is well settled that when from the face of a will it is clearly apparent that there have been erasures and alterations, the burden is upon the proponent of that particular will to show that the alterations were made before the will was executed, where the alteration is entirely inconsistent with the original draft of the will, and where the original will did not disinherit the contestant, but by the altered will the contestant would lose all her rights. 57 Am. Jur., Wills, §511; Re Atkinson, 93 N. J. Eq. 139,

115 Atl. 370; Martin v. Martin, 334 Ill. 115, 165 N. E. 644, 67 A. L. R. 1127; Toebbe v. Williams, 80 Ky. 661; In re Dwyer's Will, 29 Misc. 382, 61 N. Y. Supp. 903; City National Bank v. Slocum, 272 Fed. 11, Id., 257 U. S. 637, 66 L. Ed. 409, 42 S. Ct. 49. There is an extensive note on this question found in 67 A. L. R. at page 1138. It is hard for us to believe that the attesting witnesses could testify definitely as to whether or not the alterations were present in the will at the time they signed it. In addition, from the testimony of the expert, it is very questionable as to whether the alleged attesting witnesses actually attested the will at the same time that John S. Cravens signed it, as they testified.

It is well settled that an unnoted and unexplained alteration apparent upon the face of a will is presumed to have been made after execution, and the burden of proof is upon any person asserting the contrary to show that the alteration actually was made before execution. Re Atkinson, supra; Smith v. Runkle, 86 N. J. Eq. 257, 98 Atl. 1086.

We do not think that the references to the changes in this will were sufficiently brought out in the attestation clause, because the modified will said only: "I have changed some parts of this will upon reconsidering." It did not say which parts the testator had changed, the parts which were erased or the parts which were crossed out. In our opinion, the reference in the attestation clause to changes was not sufficient to justify us in holding that the will was properly attested, when it is clearly established that the will had been altered. The matters that were crossed out had to do with the disinheriting of the son Orville, and that change was noted by someone at the place of change in the will and again at the bottom of the will; but no such notation was made regarding the erasures. We cannot say that all changes in this will are noted. See Ward v. Wilcox, 64 N. J. Eq. 303, 51 Atl. 1094. We are impressed, also, by the fact that the new typing in the will was done by another and different typist than that in the original will, and from the context of the will and the peculiarities of typing, punctuation, etc., as well as from the statement in the will itself, it is clearly indicated that John S. Cravens was the person who typed the will as originally written. Such was the testimony of the expert. The question of the authenticity of typewritten instruments and identification of the operator who typed a certain instrument has become a matter of considerable importance, and of necessity requires the assistance of experts in this field to get the correct answer. Wharton on Criminal Evidence, §425a, in discussing this problem, said:

"There are no two operators whose work is identical, even though made on the same machine, writing the same matter. It is no longer in question that the individuality of the typewriter and of the operator are distinctive and easily determined, as are the characteristics of handwriting."

This is a field in which the expert is indispensable, and courts have seen fit to give such testimony that weight to which they think it is entitled, after reviewing all the facts and circumstances. See 106 A. L. R. 735. The opportunities for making alterations in a will are so great, and the requirements of the statute that a will shall not take effect unless it is executed with due formality, so strict, that apparent alterations in a will are looked upon with suspicion. The alterations and erasures in this will must have been made after the signature of John S. Cravens was affixed thereto, and we are forced to the conclusion that section 55, Title 84, O. S. 1951, has not been complied with.

After reading the record in this case and fully weighing the evidence, we cannot say that the judgment of the trial court is clearly against the weight of the evidence. In re Creger's Estate, 135 Okla. 77, 274 P. 30, 62 A. L. R. 690.

The judgment is affirmed.

WELCH, CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.