Roy Douglas **FOOTE**, Plaintiff in Error,

v.

Alice Pearl **CARTER**, Defendant in Error.

No. 38626.

Supreme Court of Oklahoma.

Nov. 9, 1960.

Rehearing Denied Dec. 20, 1960.

Glenn O. Young and Young, Young, & Young, by David Young, Sapulpa, for plaintiff in error.

Cargill, Cargill & Chiaf, O. A. Cargill, Jr., James R. Eagleton, Oklahoma City, for defendant in error.

WILLIAMS, Vice Chief Justice.

Alice Pearl Hursey Carter, hereinafter referred to as proponent, in January, 1958, filed a petition for letters of administration with will annexed in the County Court of Oklahoma County. The last will and testament of John Benjamin Brown, brother-in-law of proponent, was attached. The purported will is as follows:

"Tulsa Okla.
"Sept 10—1932

"By this will I leave all weath, property, Real Estate and chattels to my beloved wife Medora M Brown and to my daughter my love and property of no value to my wife for all time and eternity.

"There shall be no administrator nor referee in Bankruptsy mor any other lawful methods of settlement the Court of Appeals is hereby appointed to administer my estate here and hereafter— so help me God

"This is my last will and testement.
"witness M. Butler      J B Brown
"Henry Wilson              John Benjamin
                                    Brown."

Plaintiff in Error, Roy Douglas Foote, hereinafter referred to as contestant, filed a contest of will before probate in February, 1958.

The county court, after hearing the contest, admitted this will to probate. Contestant appealed to the district court where the judgment of the county court was affirmed after a trial de novo. Contestant appeals.

Contestant asserts five propositions of error. He objects to admission of the purported will sixteen years after the death of

the testator; contends it demonstrates want of testamentary intent; that it was purposeless; that it was not entirely written in handwriting of testator; that the date thereof had been altered by someone other than J. B. Brown.

The testator had lived in Tulsa for a number of years prior to 1932. He was engaged in the oil lease brokerage business. During the first part of the year 1934 testator lost his home through mortgage foreclosure. He and his wife moved to Oklahoma City to live with their daughter and her husband, the contestant.

Testator was committed to the State Hospital at Norman on September 18, 1934, where he died in 1942.

The daughter died in 1948 without issue. By will she left all her estate to contestant.

Testator's widow died intestate in 1954. She left as heirs, her brothers and sisters, including proponent. A portfolio which had belonged to testator was found by the widow's family among items of her personal property. A brother, E. H. Hursey, took this with him to his home in East St. Louis. Some time later in going through the papers in it he found the purported will herein involved.

■ Contestant's first proposition, fully stated, was that:

"The trial court erred in not holding petitioner barred by laches and limitations from first offering instrument for probate after lapse of 16 years from death of decedent Brown, and long after death of all devisees named in instrument and long after execution of leases by legal heirs and their successors in reliance on intestate status of decedent."

In this connection, contestant relies upon Hayes v. Simmons, 136 Okl. 206, 277 P. 213. We do not consider this to be a case in point. There, more than ten years after a will was admitted to probate and after distribution had been made thereunder, a petition was filed for probate of a second will. This court held that the proponents of the second will were not entitled to have it admitted to probate because of their delay and laches. We there said that the petitioners, or those under whom they claimed, and the devisees named in the second will were parties to the final action (had under the first will) and had every opportunity to present the second will in that case and to make their claim to the estate during the four months given by published notice to creditors and claimants to file their claims; that they failed to do so, but kept silent; that they had stood by all those years with full knowledge of the proceedings without any mention of the second will although the fact was undisputed that they knew of the existence of the same; and that a portion of the estate had been sold by order of the county court.

Contestant cites no statute of limitation applicable to actions to probate wills.

In Goff v. Knight, 201 Okl. 411, 206 P.2d 992, a will was submitted for probate twenty-six years after the death of the testator. This court under the circumstances of that case found no ground for denial of probate arising from such delay.

Contestant has not shown that the proponent or either of her brothers or even the widow knew of the existence of the will until after the death of the widow. Nor has he shown either of them was guilty of purposefully not acting in the matter. Neither was it shown wherein contestant has suffered any detriment because of delay in presentation of the will for probate.

■ The contestant's second proposition is that the instrument is not a testamentary disposition and will. He argues that the instrument provides, "There shall be no administrator, no referee in bankruptcy nor other lawful methods of settlement * * *" We decline to follow contestant's argument in this respect.

Each of the cases, In re Young's Estate, 95 Okl. 205, 219 P. 100, and Craig v. McVey, 200 Okl. 434, 195 P.2d 753, cited by contestant in support of his second contention involved letters which were offered as wills. Here such is not the case. In the case at bar, the testator used the following lan-

guage: "By this will I leave * * *", "This is my last will and testament."

The wording of the will negates contestant's argument that the testator did not intend for the instrument to be probated. The testator wrote, "the Court of Appeals is hereby appointed to administer my estate." Laymen are not required to know in which court wills are probated.

"The employment of technical words is not required in order to render an instrument prepared by the testator himself a valid holographic will. It is sufficient if the writing expresses, however informally, a testamentary purpose in language sufficiently clear to be understood." 57 Am.Jur. page 432, Wills, sec. 633.

We think the above quoted language employed by the testator clearly evinced a testamentary intention.

█ By contestant's third proposition he reiterates that the instrument involved itself stated decedent did not desire it to be probated and further contends that proponent admitted in the hearing in county court that the meaning of the instrument was that the widow and daughter should share equally, even as provided by the statute providing for intestate descent and distribution and that therefore further dealing with such instrument is purposeless and frivolous, (citing authorities that courts will not decide abstract questions). We have hereinabove treated of the testamentary intent of the maker of the instrument.

With regard to the argument concerning the meaning or alleged meaninglessness of such instrument, we believe that to be a proper subject to be first dealt with in a trial court of competent jurisdiction.

█ In the case of Fisher et al. v. Gear, 196 Okl. 18, 162 P.2d 182, 183, we said:

"In Brock v. Keifer, 59 Okl. 5, 157 P. 88, 89, this court held in paragraph 3 of the syllabus, as follows: 'In a proceeding to probate a will, the court cannot construe or interpret the will or distinguish between valid and void dispositions. If the will be legally execut-

ed and proved, and not successfully attacked for want of testamentary capacity, undue influence, fraud, or duress, it must be admitted to probate.' See also: Nesbit v. Gragg et al., 36 Okl. 703, 129 P. 705, and Chouteau et al. v. Chouteau et al., 49 Okl. 105, 152 P. 373."

█ For his fourth proposition, contestant argues that the instrument here involved (1) was not entirely written, signed and dated by testator as required by statute and (2) the date thereof had been altered and changed by a person other than decedent.

In the trial below, proponent and her brothers each testified that the will in question was dated, written and signed entirely in the handwriting of testator. The contestant in his testimony admitted that the will was written and signed by the testator. He testified, however, that figure "2" in the date "1932" was not the handwriting of the testator.

It is to be noted that the testator moved to Oklahoma City from Tulsa early in 1934. In the will above the date are the words "Tulsa Okla" which would seem to indicate that the will was written while testator lived in Tulsa.

A circumstance to be considered in determining whether some one other than testator changed the date is that no punctuation marks were inserted. It would seem to be arguable that if one found himself interested in the outcome of this matter sufficiently to change the date he might be also so interested as to have added punctuation marks, such as commas or periods, in an attempt to put the meaning beyond peradventure of a doubt, the handwriting on commas, or periods being perhaps less easily identifiable as the handwriting of a certain person than letters or figures.

Contestant relies upon the testimony of Harry A. Neal, "an examiner of questioned documents". He testified at the trial that in his opinion the date first placed on the will was 1934; that the last digit had been erased; that the figure "2" had been substituted for the figure "4" and that the substitution

was made by some one other than the writer of the will.

In a written opinion of some 8 months earlier (dated February 20, 1958) which he sent to contestant's attorney, he wrote "It is also noted that there has been an erasure and that the numeral 2 was written in with a different pencil than appears in the rest of the document, exclusive of the witnesses' signatures." In this report he did not state that the figure "2" was not written by the writer of the will.

In the last two paragraphs of this letter Mr. Neal interpreted the will favorably to his client and also stated that it is open to suspicion because of the delay in filing it for probate after the death of "the maker of this will in 1942". Whether this witness, by advancing these non-germane opinions indicated bias going to the weight of his testimony, was for the consideration of the trial court.

From the appearance of the will and the testimony before him the trial court may well have determined that the testator dated, wrote and signed the will at Tulsa, Oklahoma, in 1932, and that, possibly thinking witnesses were requisite to its validity, signed it again in the presence of those whom he had sign as witnesses in Oklahoma City.

Contestant cites authorities to the effect that it will be presumed that proponent's failure to have brought in the witnesses to Mr. Brown's signatures indicates their testimony would be unfavorable. The weight of such an inference was for the trial court. The statute contestant cited refers to subscribing witnesses to a non-holographic will.

The witnessing of a holographic will does not destroy its character as such. 57 Am. Jur. 440, Wills § 648.

In McElhinny v. Trinkle et al., 91 Okl. 259, 217 P. 179 we said:

"The proponents of a holographic will having made the preliminary proof of the execution of the will by two or more credible witnesses who are famil-

iar with and knew the handwriting and signature of the testator, in case of a contest, the burden is upon the contestant to prove the matters set forth in the objections filed."

The facts in the Cravens' Estate case, 206 Okl. 174, 242 P.2d 135, 34 A.L.R.2d 615, cited by contestant are not like those in the one now before us. Therein the alterations upon the face of the will were apparent. In our case there was diversity of opinion as to whether there had been an erasure. The trial court did not find there had been an erasure.

"Evidence as to the genuineness of writings and signatures is seldom satisfactory or conclusive in its nature". McElhinny v. Trinkle, supra.

A finding inhering in the judgment that Mr. Neal's testimony and that of contestant was not sufficient to overcome that of Mr. and Mrs. E. H. Hursey, Mr. and Mrs. Carter, and Clinton Hursey that they were familiar with the writing of Mr. Brown and that the will was in his handwriting is not clearly against the weight of the evidence.

For his final proposition, contestant argues that the trial court should have found the instrument in question to have been written and dated by Mr. Brown on September 10, 1934, at a time when he was lacking in testamentary capacity. We do not agree.

Contestant cites authorities to the effect that the testator must be competent at the time he makes the will.

In the case of In re Heitholt's Estate, 202 Okl. 351, 213 P.2d 865, 867, it was said, "It has been repeatedly held in this state that the sole question involved when a will is offered for probate is the factum of the will; that is, has the will been executed and attested in the manner and form required by the statutes, and was the testator competent to make a will at the time he made it, and was the testator free from undue influence, fraud or duress in making the will?"

Testator's brother-in-law, E. R. Hursey, (proponent's brother) testified that he had seen testator at the witness' home in East

St. Louis in 1932 when testator and his wife visited for a few days; that testator at that time was "very competent"; that witness again saw the testator in June, 1934, at the family home in Oklahoma City; that testator's wife was downtown at the time; that testator was sitting on the front porch; that witness had a taxi waiting; that he did not go into the house; that he held the taxi there 10 or 15 minutes; that he did not see any change in testator over what he had seen when testator was visiting in witness' home in 1932, "not a thing".

Dr. Sperry testified as to the testator's mental condition the three times he saw him, about July or later in 1934. He said testator then talked incoherently and had hallucinations. He did not testify that the testator was not competent to make a will on September 10, 1932 or September 10, 1934. In fact, the doctor did not see the testator until in July, 1934.

In the case of In re Lamar's Estate, 206 Okl. 244, 242 P.2d 727, 729, we said, "Any inquiry as to the testamentary capacity of a testator is limited to the time at which the will is executed. Evidence as to mental condition at other times has no bearing upon it except in so far as it may throw light on the condition at the time of execution. The burden of proof of incompetency of testatrix is upon a contestant after the will has been proven to be properly executed. In re Martin's Estate, 199 Okl. 567, 188 P.2d 862. The trial court's judgment on the questions of fact will not be disturbed by this court on appeal unless it is against the clear weight of the evidence."

In this case the trial court made a finding that Mr. Brown signed the will on September. 10, 1932, and that the testator at the time he made the will was competent and knew the objects of his bounty and the nature of his property. We believe such findings are not clearly against the weight of the evidence.

There inheres in the judgment of the trial court a finding that the contestant has not met the burden of proof required of him. Such finding is approved.

Affirmed.

DAVISON, C. J., and HALLEY, BLACKBIRD, JACKSON, IRWIN and BERRY, JJ., concur.