In the Matter of the ESTATE of Myrtie S. COFFMAN, Deceased.

S. D. COFFMAN, Plaintiff in Error,

v.

Sara GORE and H. S. Coffman, individually, and as Executors of the Last Will and Testament of Myrtie S. Coffman, Deceased, Defendants in Error.

No. 42282.

Supreme Court of Oklahoma.

Sept. 22, 1970.

Garrett & Stumbaugh, Mangum, for plaintiff in error.

Charles C. Callaway, Mangum, for defendants in error.

LAVENDER, Justice:

This appeal involves an order of the District Court of Greer County, Oklahoma, in an appeal from the county court of that county, wherein the district court affirmed an order of the county court admitting a testamentary instrument dated June 30, 1964, to probate as the last will and testament of Myrtie S. Coffman, deceased, and denying admission to probate of a testamentary instrument dated June 12, 1948.

The later instrument was offered for probate by the defendants in error herein, Sarah Gore and S. H. Coffman, children of the decedent who are nominated therein as executors thereof, who are hereinafter referred to as the proponents. The plaintiff in error, S. D. Coffman, another child of the decedent, whose given name is Sidney and who is hereinafter referred to as the contestant, filed written objections to the admission of that instrument to probate, and, by separate petition, offered the earlier instrument for probate. The proponents of the later instrument filed written objections to the admission of the earlier instrument to probate, on the grounds that it was not executed, published, and attested in the manner and form prescribed by law, and that it was expressly revoked by the decedent in the later will, and was not the last will and testament of the decedent.

Myrtie S. Coffman died on January 21, 1966, in, and while a resident of, Granite in Greer County, Oklahoma, and owning real and personal property in that county which was later valued at a total of $122,-669.19 by appraisers appointed by the county court. Her husband had died in 1949, and she was survived by the contestant and five other children and three children of a predeceased son, Cornell Coffman.

In the 1964 instrument, the decedent, after providing for the payment of all of her just debts, etc., left "the sum of Ten Dollars ($10.00) and nothing more" to the

contestant herein, and the balance of her estate was left, an undivided one-sixth to each of the five other children, an undivided one-twenty-fourth to each of the two daughters of her son, Cornell Coffman, and an undivided one-twelfth in trust for the use and benefit of the son of said Cornell Coffman. This instrument expressly revoked all former wills and testamentary dispositions and instruments made by the decedent.

In addition to alleging that the 1964 instrument was not executed, published and attested as required by law, the contestant alleged in his objections to the admission thereof to probate, that, in making such will, the decedent was acting under duress, menace, fraud and undue influence, and that, on June 12, 1948, the decedent and her husband, Albert S. Coffman, entered into an oral contract pursuant to which he executed a will, on that date, which was duly admitted to probate in the County Court of Greer County, Oklahoma, about July 15, 1949, and which left all of his property and estate to the said Myrtie S. Coffman, in consideration for which, she agreed that she would, by will, leave all of their property and estate to their seven children in equal shares, and, some time after the death of the said Albert S. Coffman, this decedent did make such a will. He alleged that, by reason of Albert S. Coffman's death after having fully performed his part of such contract, this decedent was bound and obligated to carry out her part of the agreement by making a valid will leaving all of their property and estates to their seven children in equal shares, and was not privileged to make a new will which would, in fact, disinherit the contestant.

On motion of the proponents, the county court struck from the contestant's objections to the probate of the 1964 instrument, and from his petition for probate of the 1948 instrument (which adopted those allegations), his allegations concerning such contract and the effect thereof, and refused to admit any evidence concerning such a contract. After a full hearing on the petitions and objections (a transcript of which was, by stipulation of the parties admitted in evidence at the district court hearing), the county court admitted the 1964 instrument to probate as the last will and testament of this decedent, and denied admission to probate of the 1948 will, which the county court expressly found in its journal entry had been effectively revoked by the decedent in the 1964 will. The contestant appealed to the district court.

At the district court hearing de novo on the appeal, that court overruled the proponent's objections to the admission of testimony concerning an oral contract entered into between the decedent and Albert S. Coffman on June 12, 1948, the will of Albert S. Coffman, which had been admitted to probate after his death, and two instruments, testamentary in form, dated September 22, 1950, and January 13, 1954, respectively, each of which purported to be the "Last Will and Testament of Myrtie S. Coffman," and left all of her property and estate (after payment of debts, etc.) to her seven children, named therein, including this contestant, in equal shares. The only difference in the text of these two instruments is that the 1950 instrument designated T. H. Coffman as sole executor thereof, whereas the 1954 instrument designated Cornell Coffman (the deceased son mentioned in the 1964 instrument) as sole executor thereof. However, the portion where the signatures of the testator and attesting witnesses would ordinarily, appear, had been cut or torn off the 1950 instrument, and the signature of the testator on the 1954 instrument, if it had been there, had been obliterated by a large ink splotch, and no attempt was made to prove the due execution, publication, and attestation of either of such instruments as a will. Also, no attempt was made at either hearing to prove the due execution, publication and attestation of the 1948 instrument propounded for probate by the contestant.

In addition to several findings of fact on specific matters in its journal entry, the district court found that the issues must be resolved in favor of the proponents of the 1964 instrument, and ordered, adjudged and decreed that the will of Myrtie S. Coffman dated June 30, 1964, be admitted to probate and that her will dated June 12, 1948, be denied probate, and that the order of the county court be affirmed.

After the overruling of his motion for a new trial, the contestant appealed to this court.

Contestant presents all of his assignments of error in two propositions. We shall first discuss his second proposition, which is to the effect that a will executed as a part of a contract to make a testamentary disposition of property in a certain way becomes irrevocable upon the death of the other contracting party who has performed his part of the contract, and continues to be the last will and testament of the testator or testatrix in spite of a later will which disposes of the property in a different way than provided in the contract, so that the later, conflicting will cannot be admitted to probate and the earlier will which was a part of, or in accordance with, such contract, should be admitted to probate.

In our discussion of this proposition, we shall assume, as the proposition does, that the 1948 instrument propounded for probate by the contestant was executed, published, and attested in accordance with the applicable statute (84 O.S.1941, § 55, now 84 O.S.1961, § 55), even though, as mentioned above, no attempt was made by the contestant to establish those facts, other than the genuineness of the signature of Myrtie S. Coffman at the end thereof.

Because of our conclusions concerning the applicable principles of law involved, we deem it unnecessary to outline the evidence relied upon by the contestant concerning the alleged contract, or the acts of the parties which the contestant contends, apparently, would support the existence of the alleged contract.

For this second proposition, involving the alleged contract, the contestant relies entirely upon two Oklahoma cases: Tucker v. Zachary et al. (1954), Okl., 269 P.2d 773, and Jones et al. v. Tautfest et al. (1952), 206 Okl. 380, 343 P.2d 1003.

He cites the Tucker case for the rule that the mutual promises of a husband and wife to leave all of their property to their children in equal shares constitute sufficient consideration to support such a contract, and also for the holding, stated in the first paragraph of the court's syllabus to that opinion: "Where a husband and wife contract with each other to leave all their property by will to third party beneficiaries, and pursuant to such contract, the wife makes such a will but the husband does not; and thereafter both parties are killed as the result of a common disaster, the wife dying first; Held, that the third party beneficiaries may enforce the contract as against the personal representatives of the husband."

Concerning the Jones case, he argues that, contrary to the district court's specific finding, the evidence in this case, concerning the making of the oral contract alleged in his objections to the will of June 30, 1964, and (by reference thereto) in his petition for the admission to probate of the will of June 12, 1948, meets the requirements set forth in the second paragraph of the court's syllabus to the opinion in the Jones case: "Before equity will enforce an oral contract to devise property, the proof of the contract must be so cogent, clear and forceable (sic) as to leave no reasonable doubt as to its terms and character."

Without questioning any of the principles applied in either of those cases [and, see: Horton et al. v. Cronley et al. (1953), Okl., 270 P.2d 306, and Johnson, Administrator et al. v. Hazaleus (1959), Okl., 338 P.2d 345, wherein substantially the same principles are applied to circumstances comparable to those involved in the Tucker case], we note that none of such cases holds that a will executed pursuant to

such a contract is irrevocable, or becomes irrevocable upon the death of the other contracting party who has performed his or her part of such a contract, or holds that, because of such a contract and performance thereof by one of the contracting parties, a subsequent will of the surviving party, in conflict with the provisions of the contract, cannot be admitted to probate as the last will and testament of the survivor.

In fact, none of those cases originated in a county court on a petition to admit to probate either a will executed pursuant to such a contract or a will conflicting with such a contract. Each of those cases originated in the district court as an action by the third party beneficiaries, against the estate of the last decedent, for specific performance of (or to enforce) an alleged contract to devise and/or bequeath property in a certain way—which, the Johnson case, just cited, holds, is one of equitable cognizance.

Nothing said in any of those cases supports this contestant's contention concerning the effect of such a contract upon a will executed pursuant to such a contract, or upon a subsequent will in conflict with such a contract, insofar as the admission to probate of such a will is concerned.

Although not involved therein, this court said in the Tucker case (wherein the husband and wife had signed a conjoint-mutual will which, except for the husband's signature, was entirely in the handwriting of the wife who later predeceased the husband), it is obvious that evidence of the existence of the alleged contract would not even have been material in the proceeding for the probate of such will as the last will and testament of the husband, where the only real issue was "the factum of the will," citing Armstrong et al. v. Letty et al. (1922), 85 Okl. 205, 209 P. 168. In the Armstrong case, the court said, at pages 169 and 170 of the Pacific report:

"This court has repeatedly held that the sole question involved, when a will is offered to the county court for pro-

bate, is the factum of the will. That is, has the will been executed and attested in the manner and form required by the statutes, and was the testator competent to make a will at the time he made it, and was he free from the disabilities which operate under our statute to defeat the will? Letts v. Letts, 73 Okl. 313, 176 P. 234; 28 R.C.L. 379; 40 Cyc. 1373; Taylor v. Hilton, 23 Okl. 354, 100 P. 537, 18 Ann.Cas. 385; Brock v. Keifer, 59 Okl. 5, 157 P. 88."

This statement from the Armstrong case became a paragraph of the court's syllabi to the opinions in the later cases of In re Heitholt's Estate (1950), 202 Okl. 351, 213 P.2d 865, and In re Lamar's Estate (1952), 206 Okl. 244, 242 P.2d 727. Also, see: In re Estate of Marinoff, Deceased (1956), Okl., 297 P.2d 387, and Foote v. Carter (1960), Okl., 357 P.2d 1000, 1004.

Under this well-established principle of law, this contestant's allegations concerning a contract by this decedent and her husband to leave all of their property to their children in equal shares, and his evidence purporting to show the existence of such a contract, were wholly immaterial in the proceedings involved herein, and, therefore, could not affect the question presented to the county court (and the district court on appeal) as to whether or not the later will of this decedent should be admitted to probate as her last will and testament.

84 O.S.1941 or 1961, § 52—like Section 1279 of the Civil Code of California, cited in the 1924 case of In re Rolls' Estate, 193 Cal. 594, 226 P. 608—provides that:

"A conjoint or mutual will is valid, but may be revoked by any of the testators in like manner with any other will."

And, under the provisions of 84 O.S.1941 or 1961, § 101, a written will, or any part thereof, can be revoked either (a) by a written will or other writing of the testator, declaring such revocation and executed with the same formalities with which a will should be executed by such testator, or (b) by being burnt, torn, canceled, obliter-

ated or destroyed, with intent and for the purpose of revoking the same, by the testator himself, or by some person in his presence and by his direction.

In the Rolls' Estate case, supra, the Supreme Court of California, after quoting section 1279 of the Civil Code of that state, supra, held (page 611 of the Pacific report) that whoever enters into a contract with another to execute a conjoint or mutual will does so with notice given by the statute itself that such a will is subject to revocation, and, because of such statute, held that the remedy to enforce such a contract must be found in a court of equity. And, in the 1925 case of In re Berry's Estate, 195 Cal. 354, 233 P. 330, 333, the Supreme Court of California treated the Rolls' Estate case as holding that the fact that a will is executed in violation of a contract which called for a different testamentary disposition affords no ground for the denial of probate thereof and that the remedy for a wrong arising out of the violation of a contract in respect of the making of a will cannot be litigated in a probate court, but must be pursued in a court of law or a court of equity.

■ In view of the fact that, under our statutes, every will is subject to revocation by the testator in the manner provided by such statutes, and the principle of law that, when an instrument is offered to a county court for probate as the last will and testament of a decedent, the sole question presented in the factum of the will, we agree with the Supreme Court of California insofar as it held in the Rolls and Berry estate cases, supra, that the fact that a will was executed in violation of a contract which called for a different testamentary disposition affords no ground for the denial of probate of such instrument as the last will and testament of the decedent in question.

■ Under this rule, the district court did not err in refusing to deny admission to probate of the decedent's will of June 30, 1964, on the ground that it was executed in violation of an alleged contract by the decedent to make a different disposition of the property of the parties to the alleged contract, or on the ground that the decedent's testamentary instrument of June 12, 1948, was a part of, or was executed pursuant to, such a contract, and, therefore, was irrevocable.

This makes it unnecessary for us to determine, in this appeal, whether or not the evidence concerning the contract alleged by the contestant herein met the requirements set forth in the second paragraph of the syllabus to Jones et al. v. Tautfest, supra, or whether or not the testamentary instrument of June 12, 1948, was executed, published, and witnessed in the manner and form required by statute, since it was revoked in the later instrument.

The contestant's second proposition cannot be sustained.

In his other proposition, the contestant contends that, where the evidence in a will contest on the ground of undue influence shows a confidential relationship between one of the beneficiaries and the testator, undue influence is presumed, and the burden shifts to the proponent to show lack of undue influence; that that occurred in the present case, but the proponents made no attempt to show lack of undue influence; and that, therefore, the trial court erred in admitting the will of June 30, 1964, to probate.

The will, under attack, appears to have been subscribed and attested in the manner and form required by the applicable statute (84 O.S.1941, § 55), and the signature of the testatrix, at the end thereof, was identified as the signature of the decedent involved herein. All three of the attesting witnesses testified to facts which would establish the execution, publication, and witnessing of such instrument in accordance with the statute. Apparently, the contestant concedes the due execution, publication, and witnessing of the will. So, since this instrument was the last will executed and expressly revoked all former wills and testamentary dispositions made by the testatrix, neither the county court,

nor the district court on appeal, erred in admitting it to probate, unless, as contended by the contestant, such later will was the result of undue influence exercised by one of his brothers, T. H. (Harold) Coffman. The contestant conterids this undue influence nullified the entire will and not just the gift to the beneficiary who exercised such influence.

On the matter of confidential relationship between the decedent and her son, Harold Coffman, and his exercise of undue influence upon her in the matter of the will of June 30, 1964, the contestant relies, basically, upon undisputed testimony to the effect that the decedent was a very religious woman and, in all of her business and affairs, tried to do what she thought the Bible commanded be done and to refrain from doing anything she thought the Bible forbade; and that her son, Harold Coffman, was a lay-preacher in the church of the same denomination to which she belonged, and, while she often consulted her preacher about such matters, she always relied heavily upon her son Harold's opinion as to whether a particular thing or act was permitted, or was forbidden, by the Bible.

The gist of the evidence relied upon by the contestant as showing the particular act on Harold Coffman's part that resulted in his mother's making a will which, in effect, completely disinherited the contestant will be mentioned after our discussion of the case of Anderson et al. v. Davis, post.

Except with respect to his contention that a will which is the result of undue influence on the part of one of the beneficiaries cannot be upheld in favor of other beneficiaries not guilty of such influence (for which he cites the 1922 Illinois case of Snyder et al. v. Steele et al., 304 Ill. 387, 136 N.E. 649, 28 A.L.R. 1), the contestant relies entirely upon the Oklahoma case of Anderson et al. v. Davis (1952), 208 Okl. 477, 256 P.2d 1099, to support his first proposition. He relies chiefly on the principles stated in the first and third paragraphs of this court's syllabus to that opinion:

"Slight evidence is sufficient to set aside a will on the ground of undue influence when a confidential relationship exists between testator and the beneficiary. In re Brown's Estate (Weeks v. O'Neill), 165 Or. 575, 108 P.2d 775."

"That confidential relationship existed between testator and beneficiary is not in itself sufficient to vitiate a will, in absence of evidence indicating that beneficiary exercised undue influence, but where confidential relationship is shown to have existed, and will is inconsistent with claims of duty and affection, slight evidence that beneficiary abused testator's confidence is sufficient to invalidate the will. In re Lobb's Will, 177 Or. 162, 160 P.2d 295."

He also quotes the following statement from Hunter v. Battiest et al. (1920), 79 Okl. 248, 192 P. 575, 579, as quoted with approval in the Anderson case:

" 'When the legal presumption of undue influence has arisen by showing confidential relations, whether in dispositions of property inter vivos or by will, the burden of proof is upon the party seeking to take the benefit of such disposition to rebut the presumption attaching thereto by showing either a severance of the confidential relations, or that the party making the disposition had competent and independent advise in regard thereto.' "

In Anderson et al. v. Davis, supra, the decedent, who was 85 years of age at the time of executing the will in question, had no immediate family, and the value of his estate was in excess of $100,000. In the will, which was executed about one year before his death, he left five nieces and nephews $2,500. each, and left the balance of his estate to a man and his wife, neither of whom was related to the decedent by blood or by marriage. The man was, and for a number of years had been, the cashier of a bank in which the decedent was a stockholder and transacted all of his

banking business, and his family, including his father (about the same age as the decedent), had been friends with the decedent for many years. There was evidence that, about two years before the execution of the will, in a hospital, the decedent had sustained a broken leg in an accident, was in the hospital for about a year, and was back in the hospital a time or two after that, and was ill at times in his hotel room; that, from the time of the decedent's injury until his death some three years later, the bank cashier in question had complete charge of the decedent's business affairs; that during this period, there was a steady decline in the decedent's physical health and strength and in his mental competency; and that this bank cashier had the will in question prepared, he said, at the decedent's request and in accordance with his directions. There was also evidence that, about six months, and four months, prior to the execution of the will, this bank cashier obtained from the decedent, without any consideration, a release of a mortgage on his home and a deed to a city lot and some farm lands of high value, and, about six months after the execution of the will, obtained from the decedent, without any consideration, assignments of the decedent's stock in the bank and in two building and loan associations.

In reversing the district court's order admitting the will to probate in that case, and remanding the cause with directions to deny probate of the will, this court held, in effect, that the trial court's finding of no undue influence on the part of the bank cashier was clearly against the weight of the evidence.

The fact situation involved in Anderson et al. v. Davis, supra, is not at all comparable to the fact situation involved in the present case. While this testatrix was about 80 years of age when she executed this will, there is no evidence that she had any physical or mental infirmity at that time, other than what she thought was a "planter's wart" on her foot, which, the contestant and his daughter testified, she had told them about two years before the date of this will had been diagnosed as cancerous. The beneficiary who is accused by the contestant of having exercised undue influence upon the testatrix in the making of this will was related by blood to the testatrix, and was not the principal beneficiary under the will, for, although he would fare better under the will than his brother who is the contestant herein, he would fare no better under the will than either of his other two brothers, or either of their two sisters, or the three children of their predeceased brother (who, together, would receive the same portion of the estate as the accused beneficiary and each of the decedent's children except this contestant). Like the contesting son of the decedent, the accused son of the decedent had no part whatsoever in the preparation of the will in question, which was prepared by an attorney in a town some distance from the town where the decedent lived and had been taken by her, alone, to a home-town store operated by one of the three attesting witnesses, where it was executed. This will is not inconsistent with claims of duty and affection. The Anderson case, cited by the defendant, is not at all in point on the facts.

■ To invalidate a will, "undue influence" must be "wrongful influence," which destroys the free agency of the testator and which, in effect, substitutes the will of another for that of the testator [Hubbell et al. v. Houston et al. (1967), Okl., 441 P.2d 1010].

Under the evidence, the most that can be said against the accused beneficiary (if it be against him) is that, when his mother asked him the same question that she asked at least three of her other children, whether or not, as a Christian, she could leave any of her property to her son who now contests her will and who, she clearly thought, would gamble away anything she left to him in her will, this son pointed to language in the Bible which he (and apparently the decedent) thought would pro-

hibit doing so, whereas the other three told their mother that that was something she would have to decide for herself.

Neither the district court's finding to the effect that the contestant had not sustained his burden of showing that the 1964 will was the result of undue influence exercised by T. H. (Harold) Coffman, nor that court's order and judgment admitting the 1964 will to probate as the last will and testament of the decedent and denying admission to probate of the 1948 will, is clearly against the weight of the evidence.

A judgment of the trial court in probating a will, and findings of the court upon issues presented by the contestants, will not be disturbed on appeal to this court, unless clearly against the weight of the evidence.

Order affirmed.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, HODGES and McINERNEY, JJ., concur.